Anthony M. Livoti, J.
The petitioner instituted this proceeding for an order (1) to invalidate, declare null and void and strike out the nominating petition filed with the Board of Elections of the City of New York, said petition purporting to nominate and designate Robert E. Barnes as the candidate of the Civic Action party for the public office of Borough President of the Borough of Queens, City of New York, (2) directing the said Board of Elections to reject the aforesaid petition and (3) restraining the Board of Elections from printing or placing the name of Robert E. Barnes as the candidate of the Civic Action party for the public office of Borough President of the Borough of Queens, City of New York, on the voting machines for the general election to be held on November 7, 1961.
*9 It appears that the respondents caused to be filed on or about September 19, 1961, in the office of the Board of Elections of the City of New York certain papers alleged to constitute a nominating petition of the Civic Action party, purporting to designate Robert E. Barnes for the public office of Borough President of the Borough, of Qtoeens, City of New York. Objections to the petition were filed by the petitioner on September 22,1961.
After a canvass by the Board of Elections, a number of signatures were found, for various reasons, to be invalid. This proceeding brings up foivreview the validity of those signatures which the Board of Elections found to be valid. Since the Board of Elections’ findings are' presumptively correct, the petitioner has the burden of proving the invalidity of the signatures which were not stricken by the Board of Elections.
In attacking the validity of the petition, the petitioner alleges that the petition was not and is not in proper form and does not contain 5,000 valid signatures, which under the law are required; that said petition is insufficient in that it has not been properly numbered and bounds that the petition is insufficient in law and fact for the reasons, among other things, that the same has not been properly authenticated; that many of the signers are not qualified to sign a nominating petition; that many of the signers are not registered voters; that many of the signers failed to specify the correct address or other required information; that many changes, alterations and corrections were made without the consent or authorization of the signer or the subscribing witness; that many of the signatures were fraudulently obtained; that many of the signatures are not genuine and are not signed by the individual whose name appears thereon; that many of the witnesses’ statements were improperly executed in that the subscribing witnesses did not obtain such signatures and did not know the persons who purportedly executed said petition; further, the said petition in many other respects does not comply with the Election Law and is improper, insufficient, defective and invalid as to form, substance and content.
The respondents submit that the allegations of the petitioner are wholly without merit in law or in fact.
In the lengthy hearing before this court, a liberal attitude was allowed to both sides in the presentation of their proof. Eighty-four witnesses were called, examined and cross-examined.
In order for designating petitions to perform their lawful function, it is essential that they be kept free from fraud. The *10 Legislature made definite the requirements with respect to them and any taint of fraud would only serve to invalidate them.
Persons signing petitions must do so in the presence of the subscribing’ witness who must know them. The statute requires all subscribing witnesses to swear “I know each of the voters whose names are subscribed to the above sheet of the foregoing petition, and each of them subscribed the same in my presence.” In the eyes of the law, this gives sanctity and credence to the petition. It must be construed technically and strictly. Any deviation, omission or mistaken allegation, however slight, will operate to invalidate the petition. “ The principle of an honest authentication lies at the very foundation of our electoral process. Persons who sign petitions must do so in the presence of the subscribing witness. The failure to conform to this rule renders the petition invalid.” (Abrahams, New York Election Law, p. 139.)
In the instant case, the court found that many signatures were obtained by soliciting people in the street near the respondent’s headquarters. In many of these instances, signatures were solicited on the same sheet by several different persons, yet it was subscribed by a person who had not personally known or solicited all of those signatures.
While alterations and erasures contained in the affidavit of the subscribing witness made with his knowledge and in his presence, prior to the signing thereof and before he took the oath, will not affect the petition if it is otherwise valid, a petition sheet containing such irregularities, placed thereon subsequent to authentication, will serve to invalidate the entire sheet. These incidents were legion.
An inspection by the court of the original petition filed indicates glaring similarities in signatures and it was inescapable that they were in the same handwriting. The record does not disclose any genuine intent on the part of the petitioner to connect the candidate with the afore-mentioned irregularities. Nevertheless, the candidate should not derive the benefit of any fraud or forgeries committed by his supporters or adherents.
The court, as a matter of fact, finds gross deflections in the petition, too numerous and unnecessary to set forth, and so permeated with irregularities, rendering it invalid according to the provisions of the Election Law. The pattern is so definite and clear that to condone same would only serve to make a mockery of the Election Law. The record establishes wholesale disregard of the statutory requirement, engendered by carelessness or a desire to avoid the inconvenience associated with *11 circulating petitions. While the courts feel that nothing should be done to discourage the circulation of independent petitions, it must be done legally. (O’Connor v. Powers, 24 Misc 2d 918.)
In addition to the foregoing, the petitioner has succeeded in proving the invalidity of enough of the respondent’s signatures, in a line by line count, to have caused the count to fall below the number of signatures required by statute.
Therefore, petitioner’s motion to declare null and void and invalid the respondent’s nominating petition and to enjoin and restrain the Board of Elections from printing and/or placing upon the official voting machines at the general election to be held on November 7,1961, in and for the County of Queens, City and State of New York, the name of Robert E. Barnes, as candidate of the Civic Action party, for the public office of Borough President of the Borough of Queens, City of New York, is granted.