675 P.2d 713

Georgia BROUSSEAU, Horace F. Liston, et al., Plaintiffs/Appellants,

v.

John P. (Jack) FITZGERALD, Defendant/Appellee/Real Party in Interest,

and

The City of Tucson, a body politic, Defendant/Appellee.

No. 17052.

Supreme Court of Arizona, In Division.

Jan. 5, 1984.

Alpert & Fein by James A. Fein, Tucson, for plaintiffs/appellants.

Robert Royal, Tucson, for defendant/appellee/real party in interest Fitzgerald.

Frederick S. Dean, Tucson City Atty. by Bradford C. Detrick, Tucson, for defendant/appellee City of Tucson.

HOLOHAN, Chief Justice.

The appellants challenged the legal sufficiency of the nominating petitions filed by appellee John P. (Jack) Fitzgerald for the Democratic primary election for the office of Mayor of the City of Tucson. The superior court denied the challenge, and appellants filed an appeal pursuant to A.R.S. § 16–351(A). After hearing oral argument, this court issued an order reversing the judgment and enjoining the defendant City of Tucson from placing Fitzgerald's name on the primary election ballot, noting that a written opinion would follow at a later date.

We have jurisdiction pursuant to A.R.S. § 16–351(A).

Since we did not receive a record of the trial proceedings, the following statement of the facts of the case is based only upon the trial judge's findings in his minute entry, supplemented by the few facts agreed upon in the parties' briefs.

John P. Fitzgerald filed nominating petitions with the Clerk of the City of Tucson which contained over 1000 signatures. The required number of signatures for a candidate was 632 valid signatures. The Pima County Recorder certified that 635 valid signatures were submitted on appellee's petitions and that an additional 55 signatures were of registered Tucson electors with addresses different from that at which they were registered.

The appellants' complaint challenging the petitions was filed on July 14, 1983; trial commenced on July 26 and lasted two days. The trial court found that plaintiffs had shown "by clear and convincing evidence" that petitions submitted by Fitzgerald were circulated by minors and persons not qualified as electors, and that these petitions were verified as circulated by persons other than those who actually circulated the petitions and obtained the signatures.

The trial court found that appellants had proved that the "integrity of the nomination process ha[d] been violated by the defendant" which discredited the presumption of validity concerning the 635 signatures, but the trial court found that appellants had failed to prove that the integrity of the signatures themselves "ha[d] been violated or denigrated in any respect...." Then, finding that there was an affirmative showing through the testimony of the County Recorder and others that the 635 signatures were those of properly registered voters, the court concluded that it was "the integrity of the signatures which appears to be paramount over that of the system or manner in which the signatures were taken," and thus the signatures were valid and appellee was entitled to have his name on the ballot. The court made supplemental findings that (1) appellants failed to show they were prejudiced "in their determination of the validity of the signatures by the fact that the actual circulator(s) of the petitioners [were] not [those] who signed on the back as the circulator," and (2) to credit appellant with the 55 signatures that had address discrepancies would not create sufficient valid signatures to place his name on the ballot if the court eliminated those petitions circulated by nonelectors, minors, or persons other than those who signed on the back as circulator.

Appellants maintain that the petitions circulated by minors, nonelectors, and those certified by persons other than those actually circulating them should have been declared invalid by the trial court. If those petitions are declared invalid, the appellee does not have sufficient valid signatures.

A.R.S. § 16–315(B) requires that all nomination petitions be signed by a circulator who must be a qualified elector of this state.

A.R.S. § 16–321(B) provides, in part:

"The person before whom the signatures were written on the signature sheet shall be a qualified elector of this state and shall verify that each of the names on the petition was signed in his presence on the date indicated, and that in his belief each signer was a qualified elector who resides at the address given as their residence on the date indicated and that each signer is a member of the party the nomination of which the candidate whose name appears on the nomination petition is seeking . . . ."

■ Appellants point out that the predecessor to A.R.S. § 16–321(B)[1] contained no requirement that petitions be signed in the presence of a circulator. When the Legislature changes the language of a statute, the presumption is that they intended to make a change in existing law. *Trump v. Badet*, 84 Ariz. 319, 327 P.2d 1001 (1958); *McLeod v. Chilton*, 132 Ariz. 9, 643 P.2d 712 (App.1981).

Despite the mandatory language of the statute, appellees, point out that substance—allowing the will of the people to be expressed through their actual nominating signatures—is more important than fulfilling technical procedures. In support of their position they cite *Whitman v. Moore*, 59 Ariz. 211, 125 P.2d 445 (1942) and *Clark v. Pima County Board of Supervisors*, 128 Ariz. 193, 624 P.2d 871 (1981).

In *Whitman, supra,* this court held that the presumption of validity was destroyed on signatures to petitions with no certification by, or no notarization of, the circulator, or which were fraudulently certified, but the validity of the signatures could be restored by an affirmative showing that the signatures were in fact those of qualified electors. In *Clark* we held that variations in signatures of electors from that in their registration card merely destroyed the presumption of validity, and the candidate could overcome the discrepancy by an affirmative showing that the signature was in fact that of a qualified elector. Appellants argue that *Whitman* should be limited to situations similar to *Clark*. Defects either in circulation or signatures deal with matters of form and procedure, but the filing of a false affidavit by a circulator is a much more serious matter involving more than a technicality. The legislature has sought to protect the process by providing for some safeguards in the way nomination signatures are obtained and verified. Fraud in the certification destroys the safeguards unless there are strong sanctions for such conduct such as voiding of petitions with false certifications.

Cases in several jurisdictions support the proposition that fraud by the circulator voids the petitions associated with the fraud.

In *Weisberger v. Cohen*, 22 N.Y.S.2d 1011, 1012 (Sup.Ct.), *aff'd* 260 App.Div. 392, 22 N.Y.S.2d 835 (1940), the New York court held that "[t]he surest way to keep [the petitions] free from fraud is to let it be known that any taint of fraud will wholly invalidate them . . . ." *See also In Matter of Lombardi v. State Board of Elections*, 54 A.D.2d 532, 386 N.Y.S.2d 718 (3rd Dept., 1976) (court invalidates two entire sheets of signatures when they were "permeated with fraud"); *Application of Lebowitz*, 32 Misc.2d 8, 221 N.Y.S.2d 703 (Sup.Ct.1961) (candidate should not derive any benefit from petition with fraudulent circulation verification committed by supporters). The New Jersey Superior Court, in *McCaskey v. Kirchoff*, 56 N.J.Super. 178, 152 A.2d 140 (1959), noting that a court should not sit as "a bookkeeper rather than a justice, to apply a rule of arithmetic rather than a principle of equity," (quoting Abrahams, *New York Election Law*, 123 (1950)) invalidated entire nomination petitions where those seeking nominations themselves irregularly certified petitions which included forged signatures. *Cf. Lawson v. Davis*, 116 N.J.Super. 487, 282 A.2d 784 (App.Div.

---

1. A.R.S. § 16–304(B), repealed by Laws 1979, Ch. 209, § 2.

1971) (where verifications were made carelessly but not fraudulently there was no need to strike the petition when the election clerk independently checked the signatures).

The Appellate Court of Illinois, Fourth District, held that the statutory requirement of circulator verification of nomination petition signatures was a reasonable, "meaningful and realistic requirement designed to eliminate fraudulent signatures or perhaps a signing of large number of names to petitions by a few people," and thereupon voided a petition improperly verified (which contained the signatures which otherwise would have nominated the candidate). *Williams v. Butler*, 35 Ill.App.3d 532, 341 N.E.2d 394, 398–99 (1976); *see also, Bowe v. Chicago Electoral Board*, 79 Ill.2d 469, 38 Ill.Dec. 756, 404 N.E.2d 180 (1980) (circulator's signature notarization "mandatory and not directory"). The Supreme Court of Ohio has invalidated all nominating petitions circulated by an individual who was not a qualified elector, labelling it "not ... a technical defect but ... a substantial and fatal omission of a specific statutory requirement." *State ex rel. Schmelzer v. Board of Elections*, 2 Ohio St.3d 1, 440 N.E.2d 801, 803 (1982); *see also State ex rel. Donofrio v. Henderson*, 4 Ohio App.2d 183, 211 N.E.2d 854 (1965) (invalidating entire nomination petition on basis of fraud when circulator's affidavit knowingly verified false signatures). Finally, in *In re Glazier*, 474 Pa. 251, 378 A.2d 314, 315–316 (Pa.1977), the Pennsylvania Supreme Court held it was a "gross perversion of [the] statutory mandate" to attempt to amend and rehabilitate a nominating petition after the original attesting individual was shown not to have obtained the signatures on the petition nor know the signators. The court completely invalidated the petitions.

■ The authorities agree that statutory circulation procedures are designed to reduce the number of erroneous signatures, guard against misrepresentations, and confirm that signatures were obtained according to law. To allow the integrity of the nominating petition process to be violated by the appellee through the circulation of petitions by minors and other unqualified persons and certification of the petitions by persons other than the actual circulators without any sanction other than the inconvenience of showing that the signatures were in fact authentic would render the circulation requirement meaningless and possibly lead to additional falsehood and fraud by others. We believe that there is a real difference between mere omissions or irregularities and fraud. It does not seem unreasonable to hold a candidate for an office of public trust to a high standard of ethical conduct regarding the observance of election laws. The only way to protect the process from fraud and falsehood is to make such conduct unprofitable. We hold that petitions containing false certifications by circulators are void, and the signatures on such petitions may not be considered in determining the sufficiency of the number of signatures to qualify for placement on the ballot. Any statement to the contrary in *Whitman, supra,* is disapproved.

■ Appellee, Fitzgerald, as cross-appellant, raises three additional issues. First, appellees claim that because the trial on the challenge was not completed until eleven days after filing the action, the complaint should have been dismissed because it violated the requirements of A.R.S. § 16–351(A) that "[w]ithin ten days after the filing of the action, the superior court shall hear and render a decision on the matter." Fitzgerald argues that *Bedard v. Gonzales,* 120 Ariz. 19, 583 P.2d 906 (1978), held that the time elements in the election statutes were to be construed strictly. *Bedard,* however, deals with the time requirements for *elector* filing and is thus jurisdictional, whereas the time requirement appellee refers to is concerned with the superior court hearing a matter within its jurisdiction. We hold that the ten day requirement for action by the superior court is directory and not mandatory. The extra day before trial did not deprive the trial court of jurisdiction.

Fitzgerald also complains of the appellant's failure to supply the court with a transcript of all relevant evidence. The time constraints of these types of proceedings pose serious problems for those challenging nomination petitions. Although a transcript of the proceedings below is not essential to maintain an appeal, where there is no transcript provided the court will presume the evidence was sufficient to sustain the lower court's evidentiary findings. *Bryant v. Thunderbird Academy*, 103 Ariz. 247, 439 P.2d 818 (1968); *Matter of Estate of Mustonen*, 130 Ariz. 283, 635 P.2d 876 (App.1981). "While it is true that the court may not consider questions pertaining to evidence or findings of fact, in the absence of a transcript the court must consider questions of law which are raised by the record transmitted to the court." *Hall v. Bowman*, 88 Ariz. 409, 412, 357 P.2d 149, 151 (1960).

We find that all the *essential* elements for the determination of the issue raised by appellants are contained in the lower court's findings, and we rely on those in making our decision. *See Orlando v. Northcutt*, 103 Ariz. 298, 441 P.2d 58 (1968). Except for facts agreed to by the parties in their briefs we have not relied on the partial transcript appellants included in their record.

Appellee's third point is that the case became moot before an appellate decision was made. Appellee asserts that a challenge to nomination petitions should be declared moot after the election process has started. Appellee presented the affidavit of the City Clerk of the City of Tucson which indicates that "in order to permit the mailing of absentee ballots thirty (30) days in advance of the September 20, 1983 Primary Election ... a final determination as to the candidates on the ballot must be received by the City Clerk no later than Thursday, August 4, 1983." Contrary to appellee's assertion in his brief, however, there was no showing at oral argument that the City Clerk would not be able to have the ballots printed and distributed in time to meet the statutory time schedule for mailing absentee ballots. The appeal was expedited, and a decision was handed down on August 9 within a few hours after hearing oral argument. The delay from August 4 to 9 placed a burden on the City Clerk, but not an impossible one. We decline to find the matter moot.

Reversed and remanded with directions.

FELDMAN, J., and SARAH D. GRANT, Judge, concur.

Note: The Honorable SARAH D. GRANT, Judge of the Court of Appeals, Division One, was assigned to assist this Court in the disposition of this matter.