872 P.2d 201

**TURF PARADISE, INC.**

**v.**

**ARIZONA DEPARTMENT OF REVENUE.**

**No. TX 92–01014.**

Tax Court of Arizona.

March 30, 1994.

---

Dorothy Baran, Phoenix, for plaintiff.

Attorney Gen. by Michelle M. White, Phoenix, for defendant.

## OPINION

SCHAFER, Judge.

Turf Paradise, Inc. is in the business of racing horses. It owns horse racing tracks and, under a permit from the state, conducts racing meets at various times during the year. The State imposes a transaction privilege tax based upon the gross proceeds from the business. The issue in this case is whether the purse Turf Paradise pays to a winning horse owner is part of Turf Paradise's gross proceeds from the business of horse racing.[1]

## FACTS

In the Fall of 1989 Turf Paradise filed a claim with the Department of Revenue for a tax refund. It claimed that from 1985 through 1989 it paid more in transaction privilege taxes than it should have. It argued that during those years the Department included in Turf Paradise's "gross proceeds" money it held in trust to pay awards (purses) to winning horse owners. The Department denied the claim, then conducted an audit of Turf Paradise's books and records. The audit resulted in the issuance of an amended assessment. Turf Paradise protested both

the denial of the refund and the added assessment through the administrative process and lost at each turn. It then brought both issues to this Court. The Department filed a motion to dismiss the appeal of the amended assessment. The Court granted that motion and the only issue remaining is the denial of the refund. On that point, both sides have filed motions for summary judgment.

## ANALYSIS

Much of the horse racing in Arizona is controlled by statute, A.R.S. § 5–101, *et seq.* Section 5–111 details how the money wagered is to be distributed. The pertinent part states:

> During the period of a permit for horse or harness racing, the state shall receive, two per cent of the gross amount . . . of the total amount handled in the regular parimutuel pools. . . . The permittee shall retain the balance of the total amount deducted pursuant to subsection C of this section. Of the amount retained by the permittee, less the amount payable to the permittee for capital improvements . . . , breakage . . . , applicable state, county and city transaction privilege or other taxes . . . fifty per cent shall be used for purses.[2]

A.R.S. § 5–111(D).

Turf Paradise is the "permittee" the statute is talking about. It seems clear that once the state takes its cut (2 to 5%) of the gross proceeds, the permittee takes the rest. From that permittee's share certain things are deducted, one of which is state transaction privilege taxes. After those deductions, fifty per cent of the remainder is available for purses. Thus, the fifty per cent for purses is determined only after everything else is deducted from the total amount wagered.

---

1. It should be noted that the applicable statute, A.R.S. § 5–111, was amended several times during the time period relevant to this appeal, September 1985 through January 1990; however, the amendments do not affect the issue presented here. Effective in January 1990, the Legislature amended section 5–111 to add subsection I which specifically excludes amounts held by the permittees (like Turf Paradise) for payment of purses from transaction privilege taxes. A.R.S. § 5–111(I). Consequently, this Court is concerned with the stated issue only as it relates to

the taxpayer's business from September 1985 through January 1990 and an interpretation of the statutes as they existed during that time.

2. A.R.S. § 5–111, subsection D, was amended several times during audit period; however, none of those amendments substantively changed the quoted language which was taken from the version of the statute enacted under Chapter 212 of House Bill 2623 effective September 27, 1990.

It is equally clear that the tax base for horse racing is the gross receipts it produces without any deductions for losses, expenses or cost of goods. A.R.S. §§ 42–1301, 42–1310.13.

Turf Paradise takes the position that because the fifty per cent purse payout is mandated by statute and the purses are statutorily reserved for the horse owners, Turf Paradise merely holds the purse money in trust and has no control over or right to retain the money. Therefore, the purse money is not gross income to Turf Paradise and the taxes it paid on those purses as part of its gross income should not have been paid. Turf Paradise argues it is now entitled to a refund of that money. It bolsters its argument by pointing to the 1990 amendment to section 5–111 which added a subsection I. That new subsection says simply "Amounts held by a permittee for payment of purses pursuant to this section ... are exempt from the provisions of title 42, chapter 8 [the transaction privilege tax]." A.R.S. § 5–111(I). Turf Paradise claims this new subsection merely "construes and clarifies" the statute and should be applied retroactively. The Court disagrees.

When a statute is amended, a court must presume the legislature intended a change in the existing law. *See State v. Garza Rodriguez,* 164 Ariz. 107, 111, 791 P.2d 633, 637 (1990); *Brousseau v. Fitzgerald,* 138 Ariz. 453, 455, 675 P.2d 713, 715 (1984). In keeping with that basic tenet, this Court must presume when the Legislature added subsection I it intended to change the law, from that point forward, to exclude purse shares from transaction privilege taxes. Thus, the only reasonable conclusion is that prior to the amendment the entire amount allocated to the permittee's share was included in the permittee's gross income for transaction privilege tax purposes.

Turf Paradise raises a final argument based on equal protection. Its premise is the fact that the statutes during the relevant time period allowed dog race permittees to place purse money into a trust account and excluded that money from the permittees' gross income while horse race permittees were not given the same allowance. That difference, Turf Paradise argues, violates its right to the equal protection of the laws.

The United States Supreme Court recently spoke to this when it stated:

[R]ational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." [Citations omitted.] ... [A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. [Citations omitted.] Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. [Citations omitted.] Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." [Citations omitted.] Instead, a classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." [Citations omitted.]

*Heller v. Doe by Doe,* —— U.S. ——, ——, 113 S.Ct. 2637, 2642–2643, 125 L.Ed.2d 257 (1993). A statute is presumed constitutional and the burden is on the one attacking it to negate every conceivable basis which might support it. *Id.* at ——, 113 S.Ct. at 2643. A State has no obligation to produce evidence to sustain the rationality of a statutory classification. *Id.*

While Turf Paradise admits that the subsections of section 5–111 which govern dog and horse racing are different, it has not articulated facts which show that there is no legitimate governmental purpose for the different treatments. Also, Turf Paradise ignores the Department's offered distinctions based upon obvious differences in the two activities. One races with a jockey, the other does not. One involves dogs, the other horses. There is more than a "reasonably conceivable basis for the classification" which requires this Court to uphold the statute against a challenge on equal protection grounds.

## CONCLUSION

Applicable statutes clearly allocate a specific share of the gross amount of money wagered on horse racing to the permittee. During the time in issue, transaction privilege taxes were calculated on that entire share, with limited deductions not relevant here. After that calculation fifty per cent of the remaining money is then given to purses. Turf Paradise is not entitled to its claimed refund.

**IT IS ORDERED** granting Defendant's Motion for Summary Judgment.

**IT IS FURTHER ORDERED** denying Plaintiff's Cross–Motion for Summary Judgment.

**IT IS FURTHER ORDERED** vacating trial date of March 7, 1994.

This opinion is not a final, appealable judgment; other orders will follow. See *Devenir Associates v. City of Phoenix*, 169 Ariz. 500, 821 P.2d 161 (1991).