653 P.2d 694

**COTTONWOOD DEVELOPMENT, an Arizona partnership; George Mehl; and David Mehl, Plaintiffs/Appellants,**

v.

**FOOTHILLS AREA COALITION OF TUCSON, INC., an Arizona corporation; Virginia L. Sonett; Gerald G. Graeme; Eugenia Wells, in her official capacity as Clerk of the Pima County Board of Supervisors; Larry Bahill, in his official capacity as Director of the Pima County Election Department; Richard J. Kennedy, in his official capacity as Pima County Recorder; Sam Lena, in his official capacity as Chairman of the Pima County Board of Supervisors, Defendants/Appellees.**

No. 16170.

Supreme Court of Arizona, In Banc.

Nov. 3, 1982.

---

3. Whether the advice was good or bad, it is clear that Mullins did not follow it.

Scheff & Botwin by Michael D. Botwin, and Hirsch & Harrison by W. James Harrison, Tucson, for plaintiffs/appellants.

Louis W. Barassi, Tucson, for defendants/appellees Foothills Area Coalition of Tucson, Virginia L. Sonett, and Gerald G. Graeme.

Stephen D. Neely, Pima County Atty. by Harold Higgins, Chief Civil Deputy County Atty., Tucson, for defendants/appellees Eugenia Wells, Larry Bahill, Richard J. Kennedy, and Sam Lena.

Bilby, Shoenhair, Warnock & Dolph, P.C. by Clague Van Slyke, Tucson, brief amicus curiae for Southern Arizona Homebuilders Ass'n, Inc.

CAMERON, Justice.

In this expedited election appeal, Cottonwood Development, an Arizona partnership, challenges the 10 September 1982 judgment of the Pima County Superior Court denying Cottonwood's petition to remove from the general election ballot in Pima County a referendum sponsored by the appellees, Foothills Area Coalition of Tucson (FACT). We have jurisdiction pursuant to A.R.S. § 19–122(C).

We need answer only one question on appeal and that is whether the referendum petitions circulated by FACT complied with the Arizona constitution.

The facts necessary for the determination of this issue are the following. On 2 April 1982, Cottonwood filed applications with the Pima County Planning and Zoning Department, one to initiate a community plan for a parcel north of Tucson, the other to request revision of the zone boundaries of the official county zoning maps with respect to 300 acres within the parcel. After public hearings, the county board of supervisors, on 20 July 1982, approved appellants' applications by resolution. In doing so, the board acted upon a motion which had been altered by a series of some 19 amendments which added extensive conditions to the proposed resolution. The motion, as amended, was approved by a 3–2 vote of the board of supervisors.

The following day, FACT, after filing an application for a referendum with the appropriate county officials, commenced circulating petitions to refer the 20 July 1982 resolution adopted by the supervisors to the county electorate at the 2 November election. The text of the petition preceding the signatures read as follows:

"We the undersigned citizens and qualified electors of the state of Arizona and Pima County, respectfully order that the action taken by the Pima County Board of Supervisors at their regular meeting of July 20, 1982 relating to the Pima County Planning Department Case No. CO–13–59–4 entitled 'Catalina Foothills Zoning Plan' to amend the Catalina Area Foothills Plan to allow the property zoned CR–4, CR–5, CB–1, rather than CR–1; Case No. CO–9–82–30 entitled 'Cottonwood Development-Sunrise Drive Rezoning', allowing the rezoning of approximately 291 acres from CR–1 to CR–4, CR–5, TR, CB–1 in Cottonwood Development; and Case No. CO–13–82–1 entitled 'Hills Community Plan' allowing an amendment to the Master Plan and the ordinance in Case Nos. CO–13–59–4, CO–9–82–30 and CO–13–82–1 shall be referred to a vote of qualified electors of Pima County and all subsequent Board of Supervisors actions leading to and including ultimate adoption of the actual ordinance which rezones the Cottonwood Development and/or Murphy Investment Trusts property shall be referred to a vote of the qualified electors of Pima County for their approval or rejection at the next regular general election, and each for himself or herself says: I have personally signed this petition with my first and last names. I have not signed any other petition for the same measure. I am a qualified elector of the State of Arizona, county of Pima."

On 19 August 1982, FACT filed its signed petition for referendum with the clerk of the board of supervisors and the Division of Elections. On 26 August 1982, Cottonwood filed a complaint and applied for an order to show cause in the Pima County Superior Court, seeking to declare the form of the referendum petition legally insufficient, invalid and void, and to enjoin the election officials from certifying the petition for the November general election. After a hearing, the court denied Cottonwood's requested relief. This expedited appeal followed. After hearings held on 20 September 1982, we ordered that the matter not be placed on the general election ballot, with an opinion to follow.

■ Our constitution provides that the people have reserved the power of initiative and referendum, Ariz. Const. art. 4, pt. 1, § 1, subds. 1–3, and this power is specifically reserved to citizens of local governments. Ariz. Const. art. 4, pt. 1, § 1, subd. 8. The constitution provides that 15% of the electors may propose legislation, and 10% may require that existing legislation be referred to the people. Id. The Arizona legislature has provided, by statute, for implementation of the constitutional provision. A.R.S. § 19–101, et seq. A.R.S. § 19–144 explicitly authorizes referendum petitions against a resolution passed by a county board of supervisors. This power which is reserved to the people is not without opportunity for abuse. A small minority of the voters has the power to suspend legislation enacted by the duly elected representatives of the people, legislation that could be supported by a majority of the electors at the subsequent referendum election. *Queen Creek Land & Cattle Corp. v. Yavapai County Bd. of Supervisors,* 108 Ariz. 449, 501 P.2d 391 (1972). As we have stated:

"The right to suspend, and possibly to revoke, as given by the referendum . . . is an extraordinary power which ought not unreasonably to be restricted or enlarged by construction. It must be confined within the reasonable limits fixed by the charter [statute]. The charter [statute] prescribes what the petition for referendum shall contain, how it shall be signed, and by whom it shall be verified. These provisions are intended to guard the integrity both of the proceeding and of the petition. Where a power so great as the suspension of an ordinance or of a law is vested in a minority, the safeguards pro-

vided by law against its irregular or fraudulent exercise should be carefully maintained." *Direct Sellers Ass'n v. McBrayer,* 109 Ariz. 3, 5–6, 503 P.2d 951, 953–54 (1972), quoting *AAD Temple Bldg. Ass'n v. Duluth,* 135 Minn. 221, 226–27, 160 N.W. 682, 684–85 (1916).

Because this is a great power, the power of the minority to hold up the effective date of legislation which may well represent the wishes of the majority, the constitution and the statute made pursuant thereto must be strictly followed. *Direct Sellers Ass'n v. McBrayer, supra.*

In the instant case, we are concerned with the requirements of the constitution and statute that the referendum petitions contain a copy of the measure to be referred. Our constitution states:

"Each sheet containing petitioners' signatures shall be attached to a full and correct copy of the title and text of the measure so proposed to be initiated or referred to the people * * *." Ariz. Const. art. 4, pt. 1, § 1, subd. 9.

The statute requires the same:

"A. Every sheet for signatures shall:

\*      \*      \*      \*      \*      \*

"3. Be attached to a full and correct copy of the title and text of the measure * * * referred by the petition * * *." A.R.S. § 19–121(A)(3).

■ At a minimum, that portion of the minutes of the board of supervisors that contained the resolution and the amendments thereto would have met the requirement of the constitution and the statute requiring a copy of the measure referred. This would not have exceeded nine typewritten pages in the instant case. This was not done, and the petition was not in compliance with the Arizona constitution and statute.

■ FACT, however, while conceding that they have not complied with the plain meaning of the constitution and statute, contends that strict compliance here is unnecessary for two reasons. First, FACT, citing *Iman v. Bolin,* 98 Ariz. 358, 404 P.2d 705 (1965) and *Barth v. White,* 40 Ariz. 548,

14 P.2d 743 (1932), contends that substantial compliance is sufficient, as those cases state that a petition need only contain "some title and some text." We do not agree. *Iman* and *Barth* addressed whether a single initiative measure could contain more than one subject, with our court twice holding that it could. In both *Iman* and *Barth,* the court pointed out that it is art. 4, pt. 1, § 1 of the Arizona constitution that governs initiatives, and found that nothing in that section precludes multi-subject initiative measures. In each case the court used the same language, stating that art. 4, pt. 1, § 1 only requires that an initiative petition "have *some* title and *some* text." *Barth,* supra, 40 Ariz. at 556, 14 P.2d at 746; *Iman,* supra, 98 Ariz. at 365, 404 P.2d at 710 (emphasis in original). This meant only that this provision stated no preference for single-subject or multi-subject initiatives. This language did not interpret what satisfies the art. 4, pt. 1, § 1, subd. 9 requirement that a "full and correct copy of the title and text of the measure * * * initiated or referred" be attached to each petition. This latter issue was never before the court; in *Barth v. White* it was not considered only because plaintiffs failed to raise it properly under art. 4, pt. 1, § 1. We consider this issue for the first time today. As stated earlier, because of the extraordinary power of a minority to temporarily suspend the actions of representatives chosen by the majority, a literal reading of this requirement is justified in the context of a referendum. In this situation, it is imperative that petitions "be attached to a full and correct copy" of the measure to be referred, so that prospective signatories have immediate access to the exact wording of the public action which is to be suspended, and possibly reversed. We express no opinion today whether a similar strict reading is required in the context of an initiative, which involves the creation of new legislation.

■ Our strict reading of the attachment requirement in the present case is supported by the Oregon Supreme Court. A.R.S. § 19–121(A), which codifies the at-

tachment requirement, was adopted in part from an Oregon statute that stated in pertinent part: "Every * * * sheet for petitioners' signatures * * * shall be attached to a full and correct copy of the measure on which the referendum is demanded * * *." 1907 Or. Laws, ch. 226, § 2. In view of the fact that our statute was adopted in part from Oregon, we find Oregon cases construing their statute to be persuasive authority. *See Mileham v. Arizona Bd. of Pardons and Paroles,* 110 Ariz. 470, 520 P.2d 840 (1974). In two cases the Oregon Supreme Court noted the mandatory nature of attachment. In *Palmer v. Benson,* 50 Or. 277, 91 P. 579 (1907), the Oregon court held that the attachment of the full text of the measure to each signature sheet satisfied its state constitutional requirement that the identification of the act to be referred be sufficiently plain. In *State ex rel. McNary v. Olcott,* 62 Or. 277, 125 P. 303 (1912), the court amended its position to hold that two or more referendum petitions may be attached to a single full and correct copy of the measure to be referred. But that court did not abandon the stated requirement that a full and correct copy of the referendum measure must accompany the petitions. This accords with our interpretation of our requirement.

Second, FACT contends that since at the time of the petition drive no measure existed the title and text of which could be appended to the signature sheets, strict compliance with the constitution and the statute was impossible. Again we do not agree. The "precise language" of the particular resolution is the measure to be referred. Such a resolution was passed by the Pima County Board of Supervisors on 20 July 1982. The relevant portion of the 20 July board meeting transcript, containing the precise language of the motion and amendments thereto, was available to the circulators of the petitions. This is the minimum that must be provided to conform to the mandate of the constitution and statute. We hold that the referendum petitions did not comply with the mandates of Ariz. Const. art. 4, pt. 1, § 1, subd. 9 and A.R.S. § 19–121(A)(3).

The judgment of the Superior Court denying petitioners' relief is reversed. The order of this court, dated 20 September 1982, enjoining the Pima County Division of Elections from placing the Cottonwood Development/Sunrise Drive rezoning referendum on the 2 November 1982 ballot, is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.