SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| BILL FELDMEIER, a qualified elector of the City of Prescott, | ) Arizona Supreme Court ) No. CV-05-0325-AP/EL |
| Plaintiff/Appellee, | ) ) Yavapai County |
| v. | ) Superior Court ) No. CV 20050705 ) |
| MARIE L. WATSON, in her official capacity as the Prescott City Clerk; ANA WAYMAN-TRUJILLO, in her official capacity as Yavapai County Recorder, | ) **O P I N I O N** ) ) ) ) |
| Defendants/Appellees, | ) ) |
| CITIZENS FOR RESPONSIBLE GROWTH, | ) ) |
| Defendant/Real Party in Interest/ Appellant. | ) ) ) ) ) |
| _____ | ) |

Appeal from the Superior Court in Yavapai County
No. CV 20050705
The Honorable Robert M. Brutinel, Judge

**REVERSED AND VACATED**
_____

LAW OFFICES OF W. GIL SHAW                                        Prescott
    By   W. Gil Shaw

And

LAW OFFICES OF WILLIAM R. HOBSON                                  Chandler
    By   William R. Hobson

And

COUNTERS & KOELBEL, P.C.                                    Chandler
     By   Lisa J. Counters
          Kevin Koelbel
Attorneys for Citizens For Responsible Growth

GAMMAGE & BURNHAM, P.L.C.                                   Phoenix
     By   Lisa T. Hauser
          Michella Abner
Attorneys for Bill Feldmeier
_____

**R Y A N**, Justice

¶1        The Superior Court of Yavapai County enjoined the placement of an initiative measure on a ballot because the court found that the petition circulators' affidavits did not substantially comply with the verification requirements of Article 4, Part 1, Section 1(9), of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") section 19-112(C) (2002).  Having concluded that the affidavits complied with the legal requirements, we previously ordered that the trial court's ruling enjoining the placement of the initiative measure on the ballot be vacated, with an opinion to follow.  This is that opinion.

**I**

¶2        Citizens for Responsible Growth ("CRG"), a political committee, sought to place an initiative on the ballot to amend the Prescott City Charter.  The initiative was filed with the Prescott City Clerk with sufficient signatures to qualify the petition for the ballot.

¶3        After the City Clerk certified the measure for the

ballot, Bill Feldmeier, an elector in the City of Prescott, filed a complaint alleging, among other things, that the circulators' affidavits were defective because they "fail[ed] to satisfy the constitutional and statutory requirement that the circulator swear to his belief that each signer was a qualified elector of the City of Prescott."  The affidavit on CRG's petition avowed in relevant part that the circulator had determined that

> each individual signed this sheet of the foregoing petition in my presence on the date indicated, and I believe that each signer's name and residence address or post office address are correctly stated and that each signer is a qualified elector of the state of Arizona (or in the case of a city, town or county measure, of the city, town or county affected by the measure proposed to be initiated or referred to the people) . . . .

¶4     After conducting hearings on Feldmeier's request, the trial court enjoined the Clerk from certifying the proposed initiative for inclusion on the ballot.  The court found that the petitions did not substantially comply with the constitution because they failed to include the phrase "City of Prescott" on the circulator's affidavit.

¶5     CRG filed a timely notice of appeal.  We have jurisdiction over this appeal under Article 6, Section 5(3), of the Arizona Constitution, and A.R.S. §§ 19-122(C), -19-141 (A), (D)(2002).

**II**

**A**

¶6      On the eve of Arizona's statehood, one of the "burning issues" was whether Arizona should adopt the initiative and referendum process. *Whitman v. Moore*, 59 Ariz. 211, 218, 125 P.2d 445, 450 (1942), *overruled, in part, on other grounds by Renck v. Superior Court*, 66 Ariz. 320, 327, 187 P.2d 656, 660-61 (1947). Delegates to our constitutional convention eventually decided Arizona should join those states that had such procedures. *Id*. The voters then ratified the constitution "by a very large percentage of the votes cast." *Id*. Article 4, Part 1, Section 1, of the Arizona Constitution, and A.R.S. §§ 19-101 to -143 (2002 & Supp. 2005) set forth the rules for initiative and referendum petitions.

¶7      The initiative process reserves to the people the power to propose to the electorate laws and amendments to the constitution. Ariz. Const. art. 4, pt. 1, § 1(1). The Arizona Constitution expressly reserves the initiative power to qualified electors of political subdivisions of the state when legislative matters are purely of local concern. *Id*. § 1(8).[1] The referendum process, on the other hand, is the power of the people to accept or reject, at the polls, legislative

---

[1]    The referendum power is preserved for political subdivisions by this same provision. Ariz. Const. art. 4, pt. 1, § 1(8).

- 4 -

enactments. *Id.* § 1(1), (3). The legislature also may refer proposed legislation or constitutional amendments to the electorate. *Id.* § 1(3).

¶8 An initiative petition must include a brief description of the principal provisions of the initiative; a notice that the description may not include every provision and anyone asked to sign has a right to examine the title and full text of the measure, which must be attached to the petition; a statement that the signer demands that this initiative be submitted to the qualified electors and that, as a qualified elector, the signer has personally signed the petition and has not signed any other petitions for the same matter; and a warning that it is a misdemeanor to sign the petition if certain conditions apply. Ariz. Const. art. 4, pt. 1, § 1(9); A.R.S. §§ 19-101 to -102. Whether the circulator is paid or is a volunteer must also be indicated on the petition. A.R.S. § 19-102(B), (C).

¶9 The petition signer must also declare that he or she is a qualified elector of the proper political subdivision and must provide the "post office address, the street and number, if any, of his residence, and the date on which he signed such petition." Ariz. Const. art. 4, pt. 1, § 1(9); A.R.S. § 19-112(A). The circulator must then verify the signatures in a sworn affidavit on the back of the petition. Ariz. Const. art.

4, pt. 1, § 1(9); A.R.S. §§ 19-101(A), -102(A), -112(C), (D).

¶10 With respect to the verification requirement, the Arizona Constitution states, in pertinent part, the following:

> [E]very sheet of every [initiative or referendum] petition containing signatures shall be verified by the affidavit of the person who circulated said sheet or petition, setting forth . . . that in the belief of the affiant each signer was a qualified elector of the State, *or in the case of a city, town, or county measure, of the city, town, or county affected by the measure* so proposed to be initiated or referred to the people.

Ariz. Const. art. 4, pt. 1, § 1(9) (emphasis added). The language of A.R.S. § 19-112(C) tracks the constitutional verification requirements:

> The [circulator] . . . shall, on the affidavit form pursuant to this section, subscribe and swear before a notary public that . . . the circulator . . . [believed] each signer was a qualified elector of a certain county of the state, or, in the case of a city, town or county measure, of the city, town or county affected by the measure on the date indicated . . . .

Section 19-112(D), in turn, sets forth the form for the circulator's affidavit.[2]

_____

[2] Section 19-112(D) requires, in part, the following be printed on the reverse side of each signature sheet:

> I,(print name), a person who is qualified to register to vote in the county of _____, in the state of Arizona at all times during my circulation of this petition sheet, and under the penalty of a class 1 misdemeanor, depose and say that each individual signed this sheet of the foregoing petition in my presence on the date indicated, and I believe that each signer's name and residence address or post

- 6 -

**B**

¶11     We have long "recognized Arizona's strong public policy favoring the initiative and referendum." *W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 428, 814 P.2d 767, 769 (1991) (citing *Pioneer Trust Co. v. Pima County*, 168 Ariz. 61, 66, 811 P.2d 22, 27 (1991)).  However, in light of the differences between referendums and initiatives, we apply a different test to each when challenged on constitutional or statutory grounds.  *Id.*

¶12     We require referendum proponents to strictly comply with all constitutional and statutory requirements.  *Id.* at 428, 814 P.2d at 769 (citing *Cottonwood Dev. v. Foothills Area Coal.*, 134 Ariz. 46, 48-49, 653 P.2d 694, 696-97 (1982); *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 6, 503 P.2d 951, 954 (1972)).  The referendum power is subject to this exacting standard

---

office address are correctly stated and that each signer is a qualified elector of the state of Arizona (or in the case of a city, town or county measure, of the city, town or county affected by the measure proposed to be initiated or referred to the people) and that at all times during the circulation of this signature sheet a copy of the title and the text was attached to the signature sheet.
          (Signature of affiant)_____
(Residence address, street and
number of affiant,
or if no street address,
a description of residence
location) _____
          _____

because it "permits a 'minority to hold up the effective date of legislation which may well represent the wishes of the majority[.]'" *Id.* at 429, 814 P.2d at 770 (quoting *Cottonwood*, 134 Ariz. at 49, 653 P.2d at 697).

¶13     In contrast, "requirements as to the form and manner in which citizens exercise their power of initiative should be liberally construed." *Kromko v. Superior Court*, 168 Ariz. 51, 57-58, 811 P.2d 12, 18-19 (1991). This is because "courts must exercise restraint before imposing unreasonable restrictions on the people's legislative authority, which 'is as great as the power of the legislature to legislate.'" *Id*. at 57, 811 P.2d at 18 (quoting *State v. Osborn*, 16 Ariz. 247, 250, 143 P. 117, 118 (1914)). But, while "every reasonable intendment is in favor of a liberal construction" of the requirements for an initiative, if "the Constitution expressly and explicitly makes any departure . . . fatal," the initiative cannot be placed on the ballot. *Whitman*, 59 Ariz. at 220, 125 P.2d at 451.

¶14     The test for initiatives, unlike referenda, thus is whether the petition substantially complies with the applicable constitutional and statutory requirements. *Kromko*, 168 Ariz. at 58, 811 P.2d at 19. In deciding whether an initiative substantially complies with the constitutional and statutory requirements, a court should consider several factors, including the nature of the constitutional or statutory requirements, the

extent to which the petitions differ from the requirements, and the purpose of the requirements. *See Meyers v. Bayless*, 192 Ariz. 376, 378, ¶¶ 10-12, 965 P.2d 768, 770 (1998) (reviewing petition to see how well it complied with the title requirement); *Kromko*, 168 Ariz. at 58, 811 P.2d at 19 (reviewing the statutory requirements and the extent to which the petition complied with those requirements); *Whitman*, 59 Ariz. at 220, 223, 229, 125 P.2d at 451-52, 454 (examining statutory and constitutional signature requirements as well as the purpose behind those requirements).[3] Accordingly, in the context of the formal requirements for initiatives, substantial compliance means that the petition as circulated fulfills the purpose of the relevant statutory or constitutional requirements, despite a lack of strict or technical compliance.

---

[3] We have found substantial compliance in the following cases: *Meyers*, 192 Ariz. at 378, ¶ 12, 965 P.2d at 770 (concluding that even when the petition did not contain a clear title, but a title could be found by looking at the formatting of the petition, the petition substantially complied); *Kromko*, 168 Ariz. at 58-61, 811 P.2d at 19-22 (finding substantial compliance when the petitions included non-fraudulent extraneous short titles, which were neither authorized nor prohibited by the constitution or statutes); *Iman v. Bolin*, 98 Ariz. 358, 366, 404 P.2d 705, 710 (1965) (holding that the Secretary of State had substantially complied with requirements when he had omitted some language from the original publicity pamphlets, but later corrected the mistake through a correction sheet); *Whitman*, 59 Ariz. at 231-33, 125 P.2d at 455-56 (finding substantial compliance when more signatures were included on petitions than allowed by statute; some addresses were written by someone other than the signer or indicated only by ditto marks; and circulators did not include their cities and state, but did include their addresses).

¶15      The challenged initiative petitions must be examined as a whole to determine whether they comply with the constitutional and statutory requirements. *See Meyers*, 192 Ariz. at 378, ¶¶ 10-12, 965 P.2d at 770; *Whitman*, 59 Ariz. at 225-33, 225, 125 P.2d at 452-56, 454. If the initiative petition, as a whole, substantially complies, the challenge will fail, "unless the Constitution expressly and explicitly makes any departure [from a specific requirement] fatal." *Whitman*, 59 Ariz. at 220, 125 P.2d at 451.

### III

### A

¶16      CRG's circulator affidavit copied the form set forth in A.R.S. § 19-112(D). In reviewing the affidavit, the trial court correctly discerned that substantial compliance was the appropriate test. But the superior court held that the initiative petition did not substantially comply with the constitutional and statutory requirements because the circulator's affidavit omitted the word "Prescott," and that this omission "arguably" constituted a fatal failure to comply with requirements of the constitution.

¶17      In reaching this conclusion, the trial judge primarily relied on our decision in *Devcor*. In that case we held, in the referendum context, that the Arizona Constitution and the applicable statutes require that "the circulators [believe] each

signer to be a qualified elector [of the municipality]." 168 Ariz. at 429, 814 P.2d at 770.

¶18    In *Devcor*, a group of citizens sought to refer to Scottsdale voters a city council rezoning decision. *Id.* at 427-28, 814 P.2d at 768-69. The owners of the rezoned land challenged the sufficiency of the referendum petitions. *Id.* The referendum petition affidavits stated only that the circulator believed each signer to be a qualified elector of the State of Arizona, not that the circulator believed that the signer was a qualified elector of the City of Scottsdale. *Id.* at 429, 814 P.2d at 770. Because the affidavits included no language mentioning the City of Scottsdale, or even any indication that the measure affected legislation of "a city, town or county," we concluded that the affidavits did not strictly comply with the constitution or statutes for a referendum petition. *Id.* The petitions were therefore "insufficient to require an election."[4] *Id.* at 432, 814 P.2d at 773.

¶19    The trial court's reliance on *Devcor* is misplaced for

---

[4]    *Devcor* did discuss whether the petitions could be saved on other grounds. 168 Ariz. at 431-32, 814 P.2d at 772-73. But we held that the defects in the petitions were not cured. *Id.* Here, CRG also raised the issue of whether any possible defect could be cured with other evidence. Because we conclude the petitions in this case comply with the constitutional and statutory requirements, we do not address the issue of when or how a defective initiative petition may be cured.

three reasons. First, *Devcor* involved referendum petitions, not initiative petitions. *Devcor* therefore applied the strict compliance test and not the substantial compliance test. *Id*. at 428-29, 814 P.2d at 769-70.

¶20 Second, the language used in the circulator affidavit in *Devcor* did not track the language of the constitution. 168 Ariz. at 429-32, 814 P.2d at 770-73. Instead, the circulator's affidavit followed the form set forth in then A.R.S. § 19-112(C) (1990) and the form provided by the Secretary of State, both of which referred to a signer only as being a qualified elector of the State of Arizona. We concluded that the decision to follow the form in § 19-112(C) could not excuse the failure to follow the constitution. *Devcor*, 168 Ariz. at 430, 814 P.2d at 771. No language, parenthetical or otherwise, indicated the circulator's belief that the signers were qualified electors of the City of Scottsdale. *Id*. at 429, 814 P.2d at 770. Because Article 4, Part 1, Section 1(9), of the Arizona Constitution requires that the affiants swear to their belief that each petition signer is a qualified elector of the city when the initiated or referred matter affects a city, the petitions were constitutionally insufficient. *Devcor*, 168 Ariz. at 429-32, 814 P.2d at 770-73.

¶21 Third, the statute followed by the circulators in *Devcor* was amended shortly after the opinion in *Devcor* was

published.  *See* 1991 Ariz. Sess. Laws, 3d Spec. Sess., ch. 1, § 8.  The amended statute required the circulator affidavit form to include parenthetical language relating to local initiative or referendum measures.  *See* A.R.S. § 19-112(D).  This language tracks the language of Article 4, Part 1, Section 1(9), of the Arizona Constitution and A.R.S. § 19-112(C).  As noted, CRG used the language of the amended statute, verbatim, to create its circulator affidavits.

**B**

¶22     Because CRG's circulator affidavits expressly followed the form set out in A.R.S. § 19-112(D), the superior court erred in finding the affidavits did not substantially comply with the constitutional and statutory requirements.  For a local ballot measure, the relevant provisions require the circulator to swear out an affidavit stating, in part, a belief that the signers were qualified electors of the "city, town or county affected by the measure."  The parenthetical language in A.R.S. § 19-112(D) makes that affirmation, but does not expressly require the specific identification of the governmental subdivision involved.

¶23     While it may have been the legislature's intent to require that the parenthetical language be replaced with the name of the local governmental entity, that intent is not clear from the face of A.R.S. § 19-112(D).  The form set forth in §

19-112(D) contains lines in places in which the legislature intended for a parenthetical to be filled in. There is no line, however, under or adjacent to the parenthetical referring to "the case of a city, town or county measure." *Id*. Consequently, the failure to replace the statutory parenthetical language with the "City of Prescott" is not a basis for finding a lack of substantial compliance with the constitution or the statute.

¶**24** Moreover, because CRG used the form set out in A.R.S. § 19-112(D), its circulator affidavit complied with the purpose behind the constitutional and statutory requirements. The purpose of the verification requirements, found in Article 4, Part 1, Section 1(9), of the Arizona Constitution, and A.R.S. § 19-112(C), is to ensure the circulators use "reasonable efforts to obtain *valid* signatures." *Devcor*, 168 Ariz. at 432, 814 P.2d at 773.

¶**25** Viewed as a whole, the circulator affidavit and petition in this case fulfill the purpose underlying the constitutional and statutory requirements. The front page of the petition states that it is a City of Prescott initiative, lending meaning to the parenthetical information set forth in the circulator's affidavit. The form itself precisely tracked the statutory form in A.R.S. § 19-112(D). Because the petition clearly states that it pertains to a City of Prescott measure,

the parenthetical language in the affidavit indicates that the affiant believes the signer to be a qualified elector of the city. This is at the very least substantial – and arguably literal – compliance with the relevant statutory and constitutional mandates.

**IV**

**¶26** CRG requests costs and attorneys' fees under A.R.S. § 12-2030 (2003). That statute requires a court to award fees and expenses to any non-governmental party that prevails by adjudication on the merits "in a civil action *brought* by the party against . . . any political subdivision of this state . . . to compel . . . any officer of any political subdivision . . . to perform an act imposed by law as a duty on the officer." *Id*. (emphasis added). CRG did not bring the original action. Rather, Feldmeier brought the original action; CRG was the real party in interest. Moreover, the Prescott City Clerk and the Yavapai County Recorder did not fail to perform a duty required of them. These officials actually certified the initiative measure for the ballot; it was the superior court that enjoined the measure. We therefore deny CRG's request for attorneys' fees.

**V**

¶27      For the foregoing reasons, we reverse the trial court's judgment and vacate the injunction against the Prescott City Clerk.

_____
                                 Michael D. Ryan, Justice

CONCURRING:

_____
Ruth V. McGregor, Chief Justice

_____
Rebecca White Berch, Vice Chief Justice

_____
Andrew D. Hurwitz, Justice

_____
W. Scott Bales, Justice