IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

AUG −4 2008

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| JEFFERY J. HARRIS, | ) | |
| | ) | 2 CA-CV 2007-0160 |
| Petitioner/Plaintiff/Appellee/ | ) | DEPARTMENT A |
| Cross-Appellant, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| THE CITY OF BISBEE, ARIZONA, and | ) | |
| BISBEE CITY CLERK, HELEN LEHR, | ) | |
| | ) | |
| Respondents/Defendants/Appellants/ | ) | |
| Cross-Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause Nos. CV2006000952 and CV2006000953 (Consolidated)

Honorable Wallace R. Hoggatt, Judge

AFFIRMED AS MODIFIED

---

Jeffery J. Harris                                                                 Bisbee
                                                                       In Propria Persona


John A. MacKinnon, Bisbee City Attorney                                            Bisbee
                                                                              Attorney for
                                                                  Respondents/Defendants/
                                                                 Appellants/Cross-Appellees

---

B R A M M E R, Judge.

¶1 This case arises from the refusal of appellants City of Bisbee and Helen Lehr, Bisbee City Clerk, (collectively, "the City") to process, pursuant to A.R.S. § 19-121.01, referendum petitions submitted by appellee Jeffery Harris. The City appeals from the trial court's judgment in favor of Harris in his statutory special action brought pursuant to A.R.S. § 19-122(A). That judgment directed the City to accept and transmit for verification certain signatures on petition signature sheets that the City had previously invalidated.

¶2 The City argues the court erred by finding that an invalid individual entry on a given signature sheet did not invalidate the remaining signatures on that sheet. Harris cross-appeals, asserting the trial court erred by invalidating the individual entries. He asserts the trial court was instead required to order the City to process all the petition signature sheets and entries because the City lacked the authority to invalidate signature sheets for the reasons it had stated, had no evidence supporting its decision to invalidate those signature sheets, and had failed to comply with the requirements of §§ 19-121.01 and 19-122(A). Harris additionally asserts that the court improperly required him to prove the petition signature sheets were legally sufficient. Although we modify the trial court's judgment, we affirm its order that the City process Harris's referendum petitions.

## Factual and Procedural Background

¶3 "'We view the facts in the light most favorable to sustaining the trial court's judgment.'" *Cimarron Foothills Cmty. Ass'n v. Kippen*, 206 Ariz. 455, ¶ 2, 79 P.3d 1214, 1216 (App. 2003), *quoting Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, ¶ 2,

2

36 P.3d 1208, 1210 (App. 2001). In October 2006, the Mayor and City Council of Bisbee passed two ordinances regulating outdoor storage, junk, litter, abandoned vehicles, and dilapidated buildings. At Harris's request, the City Clerk issued a referendum petition number for each ordinance—RF-06-01 and RF-06-02.[1] In November 2006, Harris returned twenty-two separate signature sheets for each petition, requesting that referendum elections for each ordinance be held.

¶4        The City refused to process the signature sheets for either petition and sent written statements to Harris explaining its reasons. The City stated it had removed one of the RF-06-02 signature sheets from consideration because the required accompanying affidavit had not been notarized. It also stated it had removed from consideration thirteen RF-06-01 signature sheets and fourteen RF-06-02 sheets because "it appear[ed] that certain addresses [had been] 'corrected' on th[o]se signature sheets, based upon a subsequent review of the voters' registration records and not in the presence of the signers," in violation of A.R.S. § 19-112(A) and (C). Thus, the City reasoned, Harris had "[f]alsely certif[ied]" that those sheets had been "signed and completed in the appropriate manner." The City concluded that the remaining sheets did not contain sufficient signatures to submit a referendum petition and declined to transmit those sheets to the Cochise County Recorder for verification.

---

[1]Harris asserts the City "prepared the petitions . . . [and] the affidavit[s]" he used. The City notes it had "issued him [petition] numbers RF[-]06-01 . . . and RF-06-02." From these statements we surmise the City provided Harris with the printed portions—including blank signature sheets and affidavit forms—of the petitions he used that are at issue here.

¶5 Harris then filed separate statutory special actions, one for each referendum petition, requesting that the trial court order the City to accept and process the petitions. After these actions were consolidated, Harris filed an "amended complaint" asserting that the City, in refusing to process the petitions, had "unduly broadened its authority to reject entire signature sheets in a manner not consistent with Arizona Revised Statu[t]es nor with past practice." Harris again asked the trial court to order the City to accept and process the referendum petitions and additionally asked that the court "maintain continuing jurisdiction" over the matter.

¶6 After a two-day trial, the court issued findings of fact and conclusions of law, as requested by the parties pursuant to Rule 52(a), Ariz. R. Civ. P. The court found that, on the signature sheets for RF-06-02, Harris had altered a total of twenty-five addresses in entries on sixteen sheets, had changed the printed name for forty entries on sixteen sheets, and had done so in each case outside the presence and without the authorization of the signing elector. The court noted that one of those signature sheets had no notary seal. Similarly, for RF-06-01, the court found that, again outside the presence and without the permission of the signing elector, Harris had altered twenty-three addresses on fourteen signature sheets and had changed the printed names for forty-four entries on eighteen sheets. The court also found Harris had made a total of four authorized changes to signature sheets but had done so knowing the corrected address was not the elector's "actual, residential address." The court further found Harris had made these changes "following his examination

4

of voter registration records at the Cochise County Recorder's Office." The court also noted that "[Harris's] unsubstantiated assertions that all of the changes to the petitions were made at the time and in the manner required by law [were] not credible and [were] not consistent with other available evidence." Despite the changes Harris had made to the electors' printed names and addresses, the court noted that "[n]o evidence ha[d] been submitted that any of the actual signatures on [the petitions] were forged or fraudulently obtained."

¶7        In its conclusions of law, the trial court noted it was "required to determine whether the subject referendum petitions are legally sufficient." The court found that none of the signatures on the unnotarized signature sheet could be counted and determined that any entry for which the printed name or address had been altered outside the presence of the elector and without permission was invalid. The court, however, determined the City was not permitted to invalidate all signatures on any sheet containing an alteration but, rather, only the altered entry. The court ordered the City to "accept" the referendum petitions.[2]

¶8        The trial court issued its final judgment noting that, for RF-06-02, "21 signature sheets and 215 signatures" were eligible for verification and, for RF-06-01, "22 signature sheets and 220 signatures" were eligible. *See generally* A.R.S. § 19-121.01(B),(C).

---

[2]In his amended complaint, Harris also alleged that the City's actions had violated his and the petition signers' constitutional due process rights and First Amendment rights and that the City had violated the law by failing to provide him the information it had relied on in rejecting his petitions. We do not view these assertions as additional claims for relief but, instead, as arguments in support of his general complaint that the City exceeded its authority and failed to comply with applicable law. The trial court determined Harris "ha[d] failed to demonstrate any violation of his [constitutional] rights" or "right to public records access."

The court directed the City to "issue [Harris] a receipt" for the petitions and to "transmit to the Cochise County Recorder for verification forthwith the facsimile sheets containing the signatures selected by the random sample for the aforementioned total numbers of signatures eligible for verification pursuant to A.R.S. § 19-121.01(B)." This appeal and cross-appeal followed.

## Discussion

¶9        The City contends the trial court erred in invalidating only the individual signature lines that were found to have been improperly altered, rather than invalidating the entire page of signatures on which any alteration appeared, and in finding the petitions "legally sufficient" pursuant to A.R.S. § 19-122(A). *See id.* (in challenge of secretary of state's refusal to process petition, court shall order petition processed if court finds it "legally sufficient"); A.R.S. § 19-141(A) ("secretary of state" refers to city clerk when petition involves city legislation). Before reaching the City's appeal, however, we address Harris's several arguments on cross-appeal concerning his contention that § 19-122(A) does not apply to this case.

¶10        Section 19-122 describes an action challenging a refusal to process referendum petitions as an application for a writ of mandamus and permits relief only when the trial court finds the petitions "legally sufficient." Nonetheless, Harris insists that § 19-122 does not apply and his action is a special action under Rule 1(a), Ariz. R. P. Spec. Actions. He thus contends the relevant inquiry is whether the clerk exceeded her authority or otherwise abused

6

her discretion in refusing to process the petitions. *See* Ariz. R. P. Spec. Actions 3(b) and (c). Harris asserts the clerk abused her discretion and acted outside her authority in refusing to process the petitions because: (1) she invalidated signature lines and pages based on the alteration of names or addresses outside the presence of the elector, which is not a reason listed in § 19-121.01; (2) she "abandoned her mandate to make and create records" and violated Harris's right to due process by rejecting his petitions without noting "which specific entries were invalidated or which of the entire 27 petition sheets were removed"; (3) she violated his due process rights by invalidating the petitions on a basis not applied to past petitions; and (4) when she made her decision to invalidate the petitions, she had insufficient evidence to conclude the entries had been altered by someone other than the elector and outside the elector's presence.

¶11 Harris argues his actions should not be treated as an application for a writ of mandamus under § 19-122 because "[t]he very purpose for the creation of special action[s] was to simplify the relief available under the various special writs and to eliminate the necessity of complying with the requirements of complex common law." We agree with Harris's statement of the purpose behind the creation of rules governing special actions, *see Book Cellar, Inc. v. City of Phoenix*, 139 Ariz. 332, 335, 678 P.2d 517, 520 (App. 1983), but, as Rule 1(b) plainly states, "Where a statute expressly authorizes proceedings under . . . mandamus, . . . the proceedings shall be known as a statutory special action [and] the questions to be raised and considered are wholly unaffected by this Rule."

7

¶12 Section 19-122(A) provides that, when a clerk "refuses to transmit [a petition] to the county recorders for certification under § 19-121.01," a citizen "may apply to the superior court for a writ of mandamus" to compel the clerk to process the petition. Harris's action challenges the City's refusal to transmit the petitions to the Cochise County Recorder and asks the court to compel the clerk to do so; therefore, it is a statutory special action pursuant to § 19-122(A). *See* Ariz. R. P. Spec. Actions 1(b). The questions raised and considered in his action, then, are governed by § 19-122, not by Rule 3, Ariz. R. P. Spec. Actions. *See* Ariz. R. P. Spec. Actions 1(b). Accordingly, whether the clerk exceeded her authority or abused her discretion for the reasons Harris alleges is irrelevant to whether he is entitled to the relief he seeks. He is only entitled to relief if the court finds, pursuant to § 19-122(A), that his petitions were "legally sufficient."

Legal sufficiency of the petitions

¶13 As noted above, the City appeals from the trial court's judgment in favor of Harris, arguing that Harris's petitions were not legally sufficient. We review a trial court's decision to grant mandamus under § 19-122 for an abuse of discretion. *See Forszt v. Rodriguez*, 212 Ariz. 263, ¶ 9, 130 P.3d 538, 540 (App. 2006). But, "[w]e resolve questions of law involving statutory construction de novo." *Id.* As the City correctly notes, when determining the legal sufficiency of referendum petitions, we require that they "comply strictly with applicable constitutional and statutory provisions." *W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 429, 814 P.2d 767, 770 (1991). The reason for requiring strict

8

compliance is that the right of referendum is an extraordinary power "that permits a 'minority to hold up the effective date of legislation which may well represent the wishes of the majority.'" *Devcor*, 168 Ariz. at 429, 814 P.2d at 770, *quoting Cottonwood Dev. v. Foothills Area Coalition of Tucson, Inc.*, 134 Ariz. 46, 49, 653 P.2d 694, 697 (1982).

¶14        Harris nonetheless insists that "strict compliance must be harmonized with the broadly construed constitutional right to referendum in Arizona law." In support of his argument, he points to "what Arizona courts have long recognized to be the strong public policy favoring . . . referendum." *See, e.g., Devcor*, 168 Ariz. at 428, 814 P.2d at 769; *Forszt*, 212 Ariz. 263, ¶ 10, 130 P.3d at 540; *Lawrence v. Jones*, 199 Ariz. 446, ¶ 7, 18 P.3d 1245, 1248 (App. 2001). Consistent with that policy, our courts have held that, unless the failure to comply strictly with a statutory requirement is expressly made fatal, that failure "does not make the signatures appearing on the petitions null and void, but merely destroys their presumption of validity." *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 5, 503 P.2d 951, 953 (1972); *see Forszt*, 212 Ariz. 263, ¶¶ 11-12, 15, 130 P.3d at 540-41. The presumption may be restored upon proof the signatures had, in fact, "been collected in the . . . required manner and were valid." *Id.*, ¶ 15; *see also Devcor*, 168 Ariz. at 431, 814 P.2d at 772; *Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953.

¶15        Before invalidating individual signature lines based on its finding that Harris had improperly altered names and addresses of electors, the trial court determined that "[t]he printed portions of both petitions were sufficient in form." We disagree. Section 19-112(C)

9

requires an affidavit be printed on the reverse of each signature sheet in which the circulator "subscribe[s] and swear[s] before a notary public that . . . the name and address [of each elector] were printed in the presence of the elector and the circulator on the date indicated." The affidavits in Harris's petitions did not so affirm and thus do not comply strictly with the law.[3]

¶16        Harris nonetheless asserts his petitions "were in perfect technical compliance with the law" because they used the text of the sample affidavit provided in subsection (D)

---

[3]Although the City has not asserted here or in the trial court that Harris's affidavits were legally insufficient on that basis, we do not consider the issue waived. Our duty on review of a city clerk's refusal to process a referendum petition is defined by § 19-122, which does not contemplate piecemeal waiver of certain legal requirements; § 19-122 requires reviewing courts to determine the "legal[] sufficien[cy]" of referendum petitions, that is, whether they comply strictly with *all* relevant statutory and constitutional provisions. *See Devcor*, 168 Ariz. at 429, 814 P.2d at 770. To find legally sufficient a petition that does not satisfy relevant legal requirements merely because the challenging party failed to raise a particular irregularity would be inconsistent with § 19-122. *Cf. Lubin v. Thomas*, 213 Ariz. 496, ¶ 18, 144 P.3d 510, 513 (2006) (in reviewing signatures in nomination petition, county recorder may invalidate signatures for any legitimate reason, not merely for reasons raised by challengers, because purpose of review "not served by holding that a signature should be treated as valid merely because the County Recorder has found it invalid for a reason other than that alleged").

Moreover, the City has recognized—in its written statement of reasons for refusing to process Harris's petitions, in the trial court, and in its opening brief on appeal—that § 19-112(C) requires "the circulator [to] avow by affidavit that the names and addresses were written in the presence of the elector on the date of signing." Whether Harris's affidavits include that language underlies one of the City's primary justifications for its refusal to process the petitions—namely that Harris had falsely certified "the name and address [of each elector] were printed in the presence of the elector and the circulator on the date indicated." § 19-112(C).

10

of § 19-112.  Subsection (D) states that "the affidavit [required under § 19-112(C)] shall be in the following form":

Affidavit of Circulator

State of Arizona          )
                          )     ss.:
County of _____ )
 (Where notarized)
        I, (print name), a person who is qualified to register to vote in the county of _____, in the state of Arizona at all times during my circulation of this petition sheet, and under the penalty of a class 1 misdemeanor, depose and say that each individual signed this sheet of the foregoing petition in my presence on the date indicated, and I believe that each signer's name and residence address or post office address are correctly stated and that each signer is a qualified elector of the state of Arizona (or in the case of a city, town or county measure, of the city, town or county affected by the measure proposed to be initiated or referred to the people) and that at all times during circulation of this signature sheet a copy of the title and text was attached to the signature sheet.

        (Signature of affiant) _____

(Residence address, street and
number of affiant,
or if no street address,
a description of residence
location) _____

        _____

Subscribed and sworn to before me on _____(date).

_____
Notary Public
_____, Arizona.

My commission expires on _____.
(date)

Harris reasons that, despite the language of § 19-112(C), because he used the form of affidavit provided by § 19-112(D), his affidavit complies with the law.

**¶17**     In *Western Devcor*, our supreme court addressed a similar issue. There, the circulator of a referendum petition regarding a Scottsdale city zoning decision had used the affidavit provided in § 19-112(D),[4] which at that time required the circulator to affirm that "each signer [of the petition] is a qualified elector of the state of Arizona." 1991 Ariz. Sess. Laws 3d Spec. Sess., ch. 1, § 8; *see Devcor*, 168 Ariz. at 430, 814 P.2d at 771. However, both § 19-112(C) and article IV, pt. 1, § 1(9) of the Arizona Constitution provided that, when a referendum petition concerns a city measure, the circulator's affidavit must verify his or her belief that "each signer was a qualified elector of . . . the city . . . affected by the measure." Although the circulator had used the sample affidavit provided in § 19-112(D), our supreme court determined that the affidavits did not comply strictly with the law.

---

[4]Although we refer to § 19-112(C) and (D) as they are currently designated, at the time *Devcor* was decided, subsections (C) and (D) were contained in subsections (B) and (C), respectively. In 1991, after *Devcor* was decided, the legislature amended § 19-112, redesignating former subsections (B) and (C) as current subsections (C) and (D), amending subsection (D) to include the language the supreme court in *Devcor* concluded it had lacked, and adding a new subsection (B). 1991 Ariz. Sess. Laws 3d Spec. Sess., ch. 1, § 8.

*Devcor*, 168 Ariz. at 430-31, 814 P.2d at 771-72. The court reasoned that, regardless of the sample language contained in subsection (D), a circulator's affidavit must contain the language explicitly required by subsection (C), because (D) "merely illustrates the proper *form* of a circulator's affidavit," whereas (C) "dictate[s] the proper *contents*" of the affidavit. *Devcor*, 168 Ariz. at 430, 814 P.2d at 771.[5]

¶18 Like the circulator's affidavits in *Devcor*, Harris's affidavits used the sample language found in § 19-112(D) but failed to include all of the content legally required by § 19-112(C). Harris's affidavit did not include a statement that "the name and address were printed in the presence of the elector and the circulator" pursuant to subsection (C).

¶19 The City asserts the legislative history of § 19-112 and the rules of statutory construction require us to interpret subsection (D) (apparently despite its actual language) as the required text of a circulator's affidavit and subsection (C) as describing "what the avowal

---

[5]Harris contends the supreme court "overrule[d]" *Devcor* in *Feldmeier v. Watson*, 211 Ariz. 444, 123 P.3d 180 (2005). But *Feldmeier* neither overruled *Devcor* nor questioned its reasoning. In *Feldmeier*, the Yavapai County Superior Court, relying on *Devcor*, had found a petition legally insufficient because the petition's accompanying affidavits did not verify that the petition signers were qualified electors of the City of Prescott. 211 Ariz. 444, ¶¶ 3-4, 17, 123 P.2d at 181-82. The supreme court reversed that decision, noting the trial court's reliance on *Devcor* had been misplaced because, unlike in *Devcor*, the petition in *Feldmeier* was an initiative petition, which therefore needed only to substantially comply with the law, not comply strictly. 211 Ariz. 444, ¶ 19, 123 P.2d at 184. The supreme court then determined the affidavits in that case substantially complied with the law because, although they did not name the City of Prescott, they had used the exact language of article IV, pt. 1, § 1(9) of the Arizona Constitution and § 19-112(C), affirming that each signer was a qualified elector "of the city, town, or county" affected by the initiative. *See Feldmeier*, 211 Ariz. 444, ¶ 21, 123 P.2d at 184-85.

[in (D)] must mean," or that the language of (D) implicitly includes the language of (C). The City further contends that, if we require affidavits to contain the language mandated in (C) despite the legislature's failure to include it in the sample form in (D), we "usurp[] legislative authority and abdicat[e] judicial responsibility." But our supreme court in *Devcor* has already interpreted § 19-112 and attempted to harmonize subsections (C) and (D). In doing so, it determined that (C), along with any relevant constitutional provisions, dictates the proper content of the text of a circulator's affidavit and (D) merely illustrates the proper form of that affidavit. *Devcor*, 168 Ariz. at 430, 814 P.2d at 771. We are bound by that interpretation. *See City of Mesa v. Smith Co. of Ariz., Inc.*, 169 Ariz. 42, 45, 816 P.2d 939, 942 (App. 1991) ("This court is, of course, bound by the construction of a statute given by the Arizona Supreme Court."); *see also Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, ¶ 10, 19 P.3d 1241, 1245 (App. 2001) (appeals court bound by supreme court's interpretation of statute).

¶20        As both Harris and the City note, the subsection (C) language the affidavits in *Devcor* lacked was also required by article IV, pt. 1, § 1(9) of the Arizona Constitution, a fact upon which the court in *Devcor* additionally relied in reaching its decision. 168 Ariz. at 430-31, 814 P.2d at 771-72. Although the language relevant to our determination does not mirror existing constitutional requirements,[6] the supreme court's reasoning regarding reliance on

---

[6]The language from subsection (C) that Harris's affidavits lacked reflects § 19-112(A)'s requirement that, "[a]t the time of signing, . . . the elector . . . or the person circulating the petition shall print [the signer's] first and last names and write . . . the signer's

14

the sample text in subsection (D) is no less applicable here. The circulator's affidavits affixed to petitions must comply with all valid legal requirements—whether described in statutes, the constitution, or both—and use of the sample affidavit in § 19-112(D) will not excuse a failure to do so.[7] *See Devcor*, 168 Ariz. at 430, 814 P.2d at 771.

¶21 As we have previously noted in ¶ 14, failure to comply strictly with a statutory requirement automatically invalidates the signatures on a referendum petition only if the statute expressly dictates that result. Otherwise, failure to comply strictly merely destroys the presumption that the signatures are valid. *Devcor*, 168 Ariz. at 431, 814 P.2d at 772. Here, § 19-112(C) does not expressly render fatal any departure from its requirements. Thus, Harris's failure to comply strictly with the statute's requirements destroyed the presumption that the signatures on the petitions were valid. To restore that presumption, Harris was required to show the printed names and addresses had, in fact, been written at the time the elector signed the petition and been written by or in the presence of the elector and the circulator. *See Devcor*, 168 Ariz. at 431, 814 P.2d at 772 (where affidavit failed to affirm

residence address."

[7]Harris does not contend that § 19-112(C), insofar as it adds requirements for referendum petition affidavits to those described in article IV, pt. 1, § 1(9) of our constitution, is an invalid exercise of legislative power. Such legislation, however, is only valid if it "does not unreasonably hinder or restrict the constitutional provision and if the legislation reasonably supplements the constitutional purpose." *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 5, 503 P.2d 951, 953 (1972). The statutory provisions here reasonably supplement the constitutional purpose behind requiring a circulator's affidavit—"to lend authenticity to the signature process [and] to compel circulators to obtain *valid* signatures, not just signatures." *Devcor*, 168 Ariz. at 432, 814 P.2d at 773.

15

circulator's belief in petition signers' qualifications, presumption of signatures' validity could be restored by proving circulator, in fact, believed signers qualified city electors); *Direct Sellers*, 109 Ariz. at 5, 503 P.2d at 953 (where affidavit did not verify circulator was qualified elector, presumption of signature validity could be restored by proof circulator was, in fact, qualified elector); *Forszt*, 212 Ariz. 263, ¶ 19, 130 P.3d at 542 ("[I]n determining whether the presumption [has been] restored, we . . . focus on whether the underlying event relevant to assuring the validity of the signatures occurred.").

¶22 The trial court gave Harris the opportunity to show the printed names and addresses on his petitions had been written in the presence of the elector but found that Harris had failed to do so as to sixty-three signature lines from RF-06-01 and sixty signature lines from RF-06-02. It found the remaining entries had been properly made. These findings are supported by the record.

¶23 Based on the trial court's finding that Harris had altered numerous signers' printed names and addresses outside of their presence after consulting voter registration records, the City contends that Harris also violated § 19-112(A), which dictates the manner in which signatures must be collected and instructs that "[a]t the time of signing, . . . the elector . . . or the person circulating the petition shall print [the signer's] first and last names and write . . . the signer's residence address." The City is correct, but the result is the same—the invalid signature lines are excluded. *Cf. Devcor*, 168 Ariz. at 432, 814 P.2d at 773 (despite improper affidavit, validity of individual signatures may be restored); *Lubin v.*

16

*Thomas*, 213 Ariz. 496, ¶¶ 6, 19, 144 P.3d 510, 511, 513 (2006) (invalid signatures individually excluded when determining whether nomination petition contained sufficient valid signatures). The City has cited no authority to support its contention that an invalid signature on any signature sheet renders all signatures on that sheet invalid. Absent any support in law or logic for such a proposition, we will not so hold. Unless expressly directed otherwise by statute, excluding all signatures on a signature sheet is appropriate only when an affidavit is defective and the presumptive validity of the affected signatures has not been restored or when, as we discuss below, the affidavit is false.

¶24 The City next advances several theories supporting its argument that Harris's petitions were falsely certified, requiring the exclusion of each signature page attached to a false affidavit. As previously noted, the City first contends Harris's affidavits were false because he affirmed that "the name and address [of each signer] were printed in the presence of the elector and the circulator," despite having altered several signers' printed names and addresses outside their presence. § 19-112(C). But this argument was based on the incorrect assumption that Harris's affidavits contained the language required by § 19-112(C). Had Harris's affidavits complied with subsection (C), his alterations as found by the trial court would have rendered false every affidavit attached to a signature page containing an alteration, invalidating those signature pages. Because the affidavits did not so comply, however, Harris's alterations of the signers' information outside their presence, although a violation of § 19-112(A), do not render the affidavits false, or invalidate the unaltered

17

signatures on the attached signature pages. Although this result appears counterintuitive, our analysis of the relevant law compels us to reach it.

¶25        The City next notes that Harris's affidavits certified his belief that "each signer's name and residence address or post office address are correctly stated." § 19-112(D). The City suggests this statement was false because Harris had altered certain signers' addresses to reflect the address at which they were registered to vote, despite knowing the signers no longer resided there. The trial court found Harris "was aware that the corrected address[es]" of two signers, U. and D., on each petition were not the signers' "actual, residential address[es]." The court did not conclude Harris knew that any of the other corrected addresses or altered names were inaccurate, thereby implicitly finding Harris had carried his burden of proving their validity. The transcript excerpts included in the record on appeal do not contradict these findings, and we must assume the missing portions of the transcripts support the trial court's findings. *See In re Property at 6757 S. Burcham Ave.*, 204 Ariz. 401, ¶ 11, 64 P.3d 843, 847 (App. 2003). Because Harris knew his corrections to U.'s and D.'s addresses were inaccurate, the affidavits affixed to the signature pages containing U.s and D.'s signatures and personal information were false. Accordingly, although the trial court ruled otherwise, those petition sheets, and all signatures on them, are invalid. *Cf. Brousseau v. Fitzgerald*, 138 Ariz. 453, 456, 675 P.2d 713, 716 (1984) ("[Nominating] petitions containing false certifications by circulators are void, and the

signatures on such petitions may not be considered in determining the sufficiency of the number of signatures to qualify for placement on the ballot.").

**¶26** The trial court additionally found—and the record shows—that the affidavit affixed to one petition sheet in RF-06-02 was not notarized. As a result, the trial court correctly concluded the signatures on that sheet cannot be counted. *See* § 19-121.01(A)(1)(e) ("sheets on which the affidavit of the circulator is not notarized" removed, and signatures thereon ineligible for verification).

**¶27** After the invalid signatures and signature pages are removed, 198 valid signatures remain on RF-06-01, and 195 valid signatures remain on RF-06-02.[8] Harris was required to collect 169 valid signatures on each petition to hold a referendum election. *See* Ariz. Const. art. IV, pt. 1, § 1(8) (ten percent of electors of city affected by measure required for referendum election). Accordingly, Harris has collected sufficient valid signatures to permit his petitions to be processed.

---

[8]After excluding the individual signatures and signature pages it had found invalid, the trial court concluded that 220 and 215 valid signatures remained on RF-06-01 and RF-06-02, respectively. The court, however, had failed to exclude all the signatures on the pages containing U.'s and D.'s addresses, which the court had found Harris had altered despite knowing the alterations were incorrect. As we concluded above, that finding rendered Harris's affidavits affixed to those signature pages false and, therefore, all signatures on both of those pages are void.

19

**Disposition**

¶28     For the reasons stated, we modify the trial court's judgment as to the number of valid signatures on referendum petitions RF-06-01 and RF-06-02 but otherwise affirm its judgment and direct the City to process those petitions pursuant to § 19-121.01.

 

 

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

 

 

_____
JOSEPH W. HOWARD, Presiding Judge

 

 

_____
JOHN PELANDER, Chief Judge