923 P.2d 833

Nicholas PACUILLA and Heidi Silver–
Pacuilla, Petitioners,

v.

COCHISE COUNTY BOARD OF SUPER-
VISORS, a body politic; Sherry Marcel,
Director, Cochise County Elections De-
partment; Christine Rhodes, Cochise
County Recorder; Respondents,

Thomas E. CAMPBELL, Real
Party in Interest.

No. CV–96–0393–AP.

Supreme Court of Arizona,
In Division.

Sept. 12, 1996.

Ruben Teran S., Douglas, for Appellants.

Douglas Riley, Cardinal & Flores by Lau-
ra Cardinal and Deron Knoner, Sierra Vista,
for Appellees.

## OPINION

KLEINSCHMIDT, Judge.[1]

▆ The dispute which gives rise to this
case is whether a candidate for school super-
intendent has sufficient valid signatures on
his nomination petitions to place him on the
ballot. The legal issue presented is whether
registered voters in Cochise County, who

1. Pursuant to Ariz. Const. art. 6, § 3, Thomas C.
Kleinschmidt and Philip E. Toci, Judges of the
Court of Appeals, Division One, were designated
to sit on this case.

have moved their residences within the county but have failed to re-register at their new addresses, are qualified electors for the purpose of signing a nomination petition. We have already issued an order declaring that such persons are qualified electors and holding that° the nominating petitions are valid. We now explain the reasons for that order.

Thomas E. Campbell filed petitions bearing signatures of purported qualified electors nominating him for the office of Cochise County School Superintendent. Nicholas Pacuilla and Heidi Silver–Pacuilla filed an action in Cochise County Superior Court challenging Campbell's petitions. The court denied the challenge.

Forty-five people who signed the petitions had moved to a new address before they signed but had not re-registered to vote from their new addresses. Both parties agree that if these forty-five contested names can be counted as valid, Campbell will have a sufficient number of signatures to place his name on the ballot for the election.

■■■ Arizona Revised Statutes Annotated ("A.R.S.") section 16–321(B), which pertains to the collection of signatures on a nominating petition, requires that "[t]he person before whom the signatures were written ... shall verify that ... each signer was a qualified elector who resides at the address given as their residence on the date indicated...." Thus, a person must be a "qualified elector" to sign nomination petitions. A qualified elector is one legally entitled to vote. *Ahrens v. Kerby*, 44 Ariz. 337, 37 P.2d 375 (1934).

■■■ Courts must exercise restraint "[w]hen interpreting constitutional and statutory provisions relating to election matters" before imposing unreasonable restrictions on the right to participate in legislative processes. *Kromko v. Superior Court*, 168 Ariz. 51, 57–58, 811 P.2d 12, 18–19 (1991). When there is any doubt regarding the form and manner of the requirements for exercising the power of initiative, a liberal construction of those requirements is favored. *Whitman v. Moore*, 59 Ariz. 211, 220, 125 P.2d 445, 454 (1942). While *Whitman* spoke specifically of the requirements relating to the initiative

power, we believe the reasoning extends to the power to nominate persons for office. Thus, qualified elector status should be construed liberally in the spirit of involving as many citizens as possible in the election process.

The Petitioners argue that to be a qualified elector one must be "properly registered to vote." A.R.S. § 16–121(A). Arizona Revised Statutes section 16–121.01 sets forth the requirements for proper registration. That statute states that a person is presumed properly registered once a registration form prescribed by section 16–152 is completed. Section 16–152(A)(3) requires that the registration form contain the "[c]omplete address of actual place of residence...." The Petitioners reason that a voter fails to meet this requirement once his address indicated on the registration form is no longer his actual place of residence. However, section 152(A)(3) addresses an initial registration. It does not address the precise situation of a properly registered voter who changes his residence within the same county.

Another statute addresses how a voter's registration is canceled. Prior to amendment, A.R.S section 16–165(A)(8) mandated that registration be canceled "[w]hen the county recorder knows the person registered has a change of residence and knows the new residence address." Now subsection (A)(8) states that the county recorder shall cancel a registration:

> When the county recorder receives written information from the person registered that the person has a change of residence within the county and the person does not complete and return a new registration form within thirty-five days after the county recorder mails notification of the need to complete and return a new registration form with current information.

Under the current version, before registration is canceled, the county recorder must take affirmative steps to provide notice of a need to complete a new registration form. It follows, that until such affirmative steps are taken, a voter's registration is not canceled, and the registrant remains a qualified elector under section 16–121.

Under amended section 16–135(A), a voter who moves to a new address within the same county but has failed to re-register using his new address remains a qualified elector, because such person is still entitled to vote. Arizona Revised Statutes section 16–584(B), which addresses polling place procedures, states: "[a] *qualified elector whose name is not on the precinct register,* upon presentation of identification verifying the identity of the elector that includes ... the complete residence address that is verified by the election board to be in the precinct, shall be allowed to vote." (Emphasis added.) By the express language of the statute, a voter remains a qualified elector despite his failure to update his address. This construction of a "qualified elector" is consistent with the underlying purpose of the amended statutes. We assume that the rationale for allowing only qualified electors to sign nominating petitions is to ensure that persons who encourage candidates to run for office have enough interest in the civic process to vote. The liberalized rule allowing a qualified elector to give his new address at the polling place ensures that a person who signs a petition will be able to vote, even if he has changed his place of residence. Thus, our decision does not undermine the policy of withholding the right to sign petitions from persons who will not be involved in the voting process.

The result we reach in our decision today is, on the surface, contrary to the result we reached in the case of *Energy Fuels Nuclear v. Coconino County,* 159 Ariz. 210, 766 P.2d 83 (1988). The reason we no longer follow *Energy Fuels* is that after we decided that case there was a significant change in the statutes that govern the issue. In *Energy Fuels,* we held that people who had moved from one precinct to another within a county and who did not re-register prior to the time of signing a petition were not qualified electors. *Id.* In that case, we rejected an argument that certain changes to A.R.S. section 16–121 (which defines "qualified elector") eviscerated prior case law which had held that signatures were invalid on a petition where the signers had failed to re-register in the new precinct into which they

had moved. *See Whitman v. Moore,* 59 Ariz. 211, 125 P.2d 445 (1942).

In *Energy Fuels,* we concluded that the only purpose of the amendment to section 16–121 was to clarify awkward language, and we pointed out that, had the legislature intended to change existing case law, it would have changed several other related statutes. Those changes have now been made in a manner which convinces us that the holding in *Energy Fuels* is no longer viable. The changes we refer to are these. In 1988, to be entitled to vote, A.R.S. section 16–135 required a person to notify the recorder of a change of address. Now that statute provides at subsection (A) that an elector who has moved within a county and has failed to update his address prior to the election date may "correct the voter registration records at the appropriate polling place for the voter's new address." A.R.S. § 16–135(A) (amended 1994).

In 1988, A.R.S. section 16–591(3) permitted a challenge to a voter who changed his residence from the precinct in which he was registered more than fifty days preceding the election. Now under that statute a change of address is no longer a valid ground for challenging a potential elector. A.R.S. § 16–591 (amended 1993).

Arizona Revised Statutes section 16–122, which forbids a person from voting unless his name appears in both the county and precinct register, was amended in 1994 to include an exception for those who correct the voter registration records at the polling place on election day.

These amendments to sections 16–135, 16–152(3) and 16–122 were prompted in part by Arizona's need to comply with the National Voter Registration Act of 1993. ARIZ.H.R., COMM. ON JUD., 41st Leg., 2d Reg. Sess., at 9 (Mar. 24, 1994). Two purposes of the National Voter Registration Act of 1993 were to increase the number of registered voters and to enhance participation of citizens as voters. 42 U.S.C. § 1973gg(b)(1)–(2) (1993). Our decision is consistent with this purpose. We affirm.

PHILIP E. TOCI, J., concurs.

**370**

JONES, Justice, specially concurring:

At the time this action was considered by the court, I expressed concern that a decision placing Mr. Campbell's name on the ballot might undermine the court's earlier decision in *Energy Fuels Nuclear v. Coconino County*, 159 Ariz. 210, 766 P.2d 83 (1988) notwithstanding the statutory changes that have been made by the legislature since that case was decided. Accordingly, my dissent was noted. After having read the majority opinion and having once again reviewed *Energy Fuels* and the subsequent statutory changes regulating voter registration, I am persuaded that the majority is correct, that *Energy Fuels,* by reason of the subsequent legislation, is no longer the law, at least as to the narrow issue raised here, and that on the record before us, Mr. Campbell should indeed have his name on the election ballot.