SUPREME COURT OF ARIZONA
En Banc

FRANKLIN BRUCE ROSS,                    )  Arizona Supreme Court
                                        )  No.  CV-11-0264-T/AP
            Petitioner/Appellant,       )
                                        )  Court of Appeals
                   v.                   )  Division One
                                        )  No.  1 CA-CV 11-0503 EL
KEN BENNETT, in his official            )
capacity as Secretary of State          )  Maricopa County
for the State of Arizona; THE           )  Superior Court
BOARD OF SUPERVISORS OF MARICOPA        )  No.  CV2011-011864
COUNTY; HELEN PURCELL, in her           )
official capacity as Maricopa           )
County Recorder; and KAREN              )
OSBORNE, in her official                )  **O P I N I O N**
capacity as Maricopa County             )
Elections Director,                     )
                                        )
            Respondents/Appellees,      )
                                        )
and                                     )
                                        )
CITIZENS FOR A BETTER ARIZONA IN        )
SUPPORT OF RC-04-2011,                  )
                                        )
            Real Party in Interest/     )
                           Appellee.    )
_____)

          Appeal from the Superior Court in Maricopa County
               The Honorable Hugh E. Hegyi, Judge

                          **AFFIRMED**
_____


          Appeal to the Court of Appeals, Division One

                         **TRANSFERRED**
_____


GAMMAGE & BURNHAM, P.L.C.                                    Phoenix
     By   Lisa T. Hauser
Attorneys for Franklin Bruce Ross

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL          Phoenix
     By   James E. Barton, II, Assistant Attorney General
          Thomas M. Collins, Assistant Attorney General
Attorneys for Ken Bennett

WILLIAM G. MONTGOMERY, MARICOPA COUNTY ATTORNEY          Phoenix
     By   M. Colleen Connor, Deputy County Attorney
          J. Scott Dutcher, Deputy County Attorney
Attorneys for Maricopa County Board of Supervisors,
Helen Purcell, and Karen Osborne

LAW OFFICE OF THOMAS M. RYAN                    Chandler
     By   Thomas M. Ryan
Attorney for Citizens for a Better Arizona in
Support of RC-04-2011

_____

**B E R C H**, Chief Justice

¶1        On July 12, 2011, Governor Janice K. Brewer ordered a special election for the recall of State Senator Russell Pearce. On September 13, 2011, this Court affirmed the trial court's order refusing to enjoin the election. This opinion explains our earlier order.

## I. FACTS AND PROCEDURAL BACKGROUND

¶2        On January 31, 2011, Citizens for a Better Arizona ("CBA") filed an application with Secretary of State Ken Bennett seeking to recall Senator Pearce, who represents Legislative District 18 in the Arizona Senate.

¶3        CBA eventually submitted a recall petition containing 18,315 signatures for certification. Secretary Bennett found 1,381 signatures ineligible and submitted the remaining 16,934 signatures to Maricopa County Recorder Helen Purcell for

- 2 -

certification. She, in turn, struck an additional 6,569 signatures and transmitted the remaining 10,365 certified signatures to Secretary Bennett. After determining that the recall petition contained more signatures than the 7,756 required, Secretary Bennett filed the petition with the Governor's office.[1] On July 12, 2011, Governor Brewer ordered a special recall election for November 8, 2011.

¶4 Six days after the Governor's order, Franklin Bruce Ross, a District 18 elector, filed suit to enjoin the recall election, alleging that the recall petition failed to meet constitutional and statutory requirements. After considering the defendants' motions to dismiss the complaint and Ross's motion for partial summary judgment, the superior court entered judgment for the defendants.

¶5 Ross appealed. We granted the parties' requests to transfer the case from the court of appeals because Ross seeks the overruling of an opinion of this Court. *See* ARCAP 19. We have jurisdiction pursuant to Article 6, Section 5, Clause 3, of the Arizona Constitution.

## II. DISCUSSION

¶6 The resolution of this case depends on the interpretation of constitutional and statutory provisions, which

---

[1] On July 18, 2011, County Recorder Purcell issued a revised certification that reduced the number of valid signatures to 10,296, still far exceeding the 7,756 required for the recall.

are issues of law that we review *de novo*. *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 308 ¶ 2, 70 P.3d 435, 437 (2003).

### A.    The Public's Right to Recall

¶7      The Arizona Constitution guarantees the people the right to recall public officers who hold elective offices. Ariz. Const. art. 8, pt. 1, § 1.  Although the recall procedure has been used rarely, recall was an important issue during the Constitutional Convention of 1910.  *See The Records of the Arizona Constitutional Convention of 1910* [hereinafter *Records*] 241-46, 259-70, 802-12, 919-22, 925-29 (John Goff ed., 1991). Sentiment favoring recall was so strong that the framers included in the constitution a recall provision for *all* public officers, despite well-placed fears that President Taft would not approve statehood if the recall provision applied to the judiciary.  *See id.* at 920, 926, 1418; Letter from President William H. Taft to the U.S. H.R. (Aug. 15, 1911) (*reprinted in* Toni McClory, *Understanding the Arizona Constitution* 193-99 (2d ed. 2010)).  The President eventually approved Arizona's bid for statehood, but only on the condition that the framers exempt judges from the recall provision.   Letter to U.S. H.R. Arizonans acquiesced to the President's request, but less than one year later, they overwhelmingly voted to amend the constitution to once again subject all public officers to

- 4 -

recall. *See* Ariz. Const. art. 8, pt. 1, § 1. This broad recall provision remains in force today. *Id.; see also* Ariz. Rev. Stat. ("A.R.S.") § 19-201(A) (Supp. 2011) (implementing constitutional recall provision).

**¶8** Given this history, this Court has interpreted constitutional and statutory provisions governing recall liberally to protect the public's right to recall its officials. *See Pacuilla v. Cochise Cnty. Bd. of Supervisors*, 186 Ariz. 367, 368, 923 P.2d 833, 834 (1996); *Johnson v. Maehling*, 123 Ariz. 15, 18, 597 P.2d 1, 4 (1979); *Abbey v. Green*, 28 Ariz. 53, 72-74, 235 P. 150, 157 (1925).

**B. CBA's Recall Petition**

**¶9** Ross argues that CBA's recall petition fails to satisfy the constitutional and statutory requirements governing the recall process. We address each of Ross's arguments in turn.

**1. The "substantial compliance" standard**

**¶10** To be eligible for certification, recall petitions must "substantially comply" with the constitutional and statutory framework. This Court first announced this standard in 1925 in *Abbey v. Green*, 28 Ariz. at 74, 235 P. at 157. Ross urges us to abandon *Abbey* and reject its 86-year-old substantial compliance standard in favor of the "strict compliance" standard more recently applied to referendum petitions. *See W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 428, 814 P.2d 767, 769

(1991); *Cottonwood Dev. v. Foothills Area Coal. of Tucson, Inc.*, 134 Ariz. 46, 49, 653 P.2d 694, 697 (1982). We decline the invitation.

**¶11** In *Abbey*, a superior court judge sought to set aside a recall election removing him from office, on the grounds that the recall petition failed to comply with several statutory provisions. 28 Ariz. at 62, 235 P. at 153. Although we concluded that the petition suffered from some technical deficiencies, we nonetheless found it "in substantial compliance with the law" and upheld the election. *Id.* at 74, 235 P. at 157.

**¶12** Among other things, the judge complained that some petition signers did not list full addresses, despite constitutional and statutory mandates that each signer list a "residence." *Id.* at 63, 235 P. at 154. We found strict compliance unnecessary because several towns did not use house numbers at that time. *Id.* The residence requirement was imposed to help the county recorder identify petition signers. Because the recorder could otherwise identify signers, we found no reason to invalidate the signatures for not listing house numbers. *Id.* at 63-64, 235 P. at 154.

**¶13** We also rejected the judge's claim that the petition was defective because each petition sheet did not include a statement of the grounds for recall. *Id.* at 62, 235 P. at 153.

Because the constitution contemplates multiple petition sheets, *see* Ariz. Const. art. 8, pt. 1, § 2, and the petition stated grounds on at least one sheet, we concluded that restating it on each sheet was unnecessary, *Abbey*, 28 Ariz. at 62, 235 P. at 153.

¶14   Finally, we rejected the judge's claim that the stated grounds for recall were "scandalous and impertinent." *Id.* at 57, 235 P. at 152.   We observed that the recall process was political – not judicial – and it was the electorate's prerogative to remove an "officer with whom, for any or no reason whatever for that matter, they may have become displeased." *Id.* at 63, 235 P. at 154 (citations omitted). Because the constitution and recall statutes did not require any allegation of "misfeasance or malfeasance," the stated grounds for removal may be "very general in their nature and character." *Id.*

¶15   *Abbey* embraced the populist themes that gave rise to recall in Arizona and recognized that the benefit of the recall process accrues to the people, not the targeted office holder. We have since reaffirmed that view and committed ourselves to liberally construing both constitutional and statutory recall provisions. *See, e.g.*, *Johnson*, 123 Ariz. at 18, 597 P.2d at 4 ("The [petition] procedure is not intended to protect incumbents from being ousted by dissatisfied voters."); *id.* ("Since the

- 7 -

provision is for the benefit of the public rather than the officials, we construe the language liberally in favor of permitting recall elections."); *Miller v. Wilson*, 59 Ariz. 403, 409-10, 129 P.2d 668, 671-72 (liberally construing Article 8 of the Arizona Constitution to permit the same body with whom recall petitions are filed to canvass and declare the result of the recall election). The substantial compliance standard embodies this commitment.

¶16      Ross urges us to overrule *Abbey* and its progeny and abandon the substantial compliance test in favor of the strict compliance standard first applied to a referendum in *Cottonwood Development v. Foothills Area Coalition of Tucson, Inc.*, 134 Ariz. 46, 49, 653 P.2d 694, 697 (1982). *Cottonwood* involved a petition to refer a county zoning resolution to the voters. *Id.* at 48, 653 P.2d at 696. Despite constitutional and statutory provisions requiring that a copy of the referred legislation accompany the petition, the petition failed to include one. *Id.* at 49, 653 P.2d at 697.

¶17      In finding the petition insufficient, we noted that a successful referendum undermines the majority will by suspending application of the referred statute or ordinance until the affected electorate can vote on its continued validity at the next general election. *Id.* at 48, 49, 653 P.2d at 696, 697; *see also* Ariz. Const. art. 4, pt. 1, § 1(3) (requiring signatures

from only five percent of the voters).  Thus, a referendum gives a "small minority of the voters . . . the power to suspend legislation enacted by the duly elected representatives of the people, legislation that could be supported by a majority of the electors at the subsequent referendum election."  *Cottonwood*, 134 Ariz. at 48, 653 P.2d at 697 (citation omitted).

¶18    We therefore cautioned that "[w]here a power so great as the suspension of an ordinance or of a law is vested in a minority, the safeguards provided by law against its irregular or fraudulent exercise should be carefully maintained."  *Id.* at 48-49, 653 P.2d at 696-97 (internal quotations omitted).

¶19    Ross argues that, like a referendum, a recall permits a minority to potentially thwart the will of the majority.  He further claims that because the framers were concerned with fraud and abuse in both recalls and referenda, we should apply the same test to both types of cases.  This reasoning, however, is faulty for at least two reasons.

¶20    First, unlike the referendum process, the recall process does not allow a minority of voters to suspend a decision supported by the majority.  Rather, in a recall, the incumbent continues to serve in office until the issue goes before the affected electorate for a full vote.  Ariz. Const. art. 8, pt. 1, § 3; A.R.S. § 19-216(B) (2002).  If the official wins the recall election, his term in office is not interrupted.

Ariz. Const. art. 8, pt. 1, § 3; A.R.S. § 19-216(A). Moreover, although a referendum petition requires signatures by only *five* percent of electors, Ariz. Const. art. 4, pt. 1, § 1(3), a successful recall petition requires the signatures of *twenty-five* percent of electors, *id.* art. 8, pt. 1, § 1. Our constitution and statutes thus already protect against abuse of the recall process.[2]

**¶21** Second, abandoning *Abbey* would fail to respect Arizona's strong devotion to recall as a progressive process intended "for the benefit of the public rather than the officials." *Johnson*, 123 Ariz. at 18, 597 P.2d at 4. The public has a constitutional right to recall elected officers for "misfeasance or malfeasance . . . or no reason whatever." *Abbey*, 28 Ariz. at 63, 235 P. at 154. The delegates to the Constitutional Convention of 1910 were willing to risk statehood over a robust recall system that subjected every official to removal. *See Records*, *supra* ¶ 7, at 920, 926. Adopting a standard that makes it more difficult for the public to remove its own officers would frustrate this historical intent. Seeing no reason to abandon 86 years of precedent and 100 years of

---

[2]    The legislature imposed additional protections against abuse of the recall system when it adopted A.R.S. § 19-208.02 (2002), which requires a second round of signature certification by the county recorder. *See* 1973 Ariz. Sess. Laws, ch. 159, § 17 (1st Reg. Sess.).

- 10 -

commitment to popular recall, we reaffirm our support of *Abbey*'s substantial compliance standard.

### 2.   The "genuineness" requirement

¶22     Ross next contends that the oath subscribed by the petition circulators was deficient.  The constitution requires circulators of recall petitions to "subscribe an oath . . . that the signatures thereon are genuine."  Ariz. Const. art. 8, pt. 1, § 2.  A statute also requires each circulator to sign "an affidavit . . . verify[ing] that each of the names on the sheet was signed in his presence on the date indicated, and that in his belief each signer was a qualified elector of the election district on the date indicated in which such recall election will be conducted."  A.R.S. § 19-205(B) (2002).

¶23     The petition in this case substantially complied with these requirements.  The circulator of each petition signed an affidavit that he or she "believe[d] that each signer's name and residence address or post office address [we]re correctly stated and that each signer [wa]s a qualified elector of the state of Arizona."  As the trial judge observed, this oath is the substantial equivalent of avowing the genuineness of the signatures.

¶24     Although the affirmation does not include the word "genuine," that omission is not determinative.  The constitution does not require any particular form of oath.  Ariz. Const.

art. 8, pt. 1, § 2.  Instead, the implementing statute sets forth the contents of the oath, *see* A.R.S. § 19-205(B),[3] which the affidavit in this case tracks nearly identically, including an affirmation that the signers' names and addresses were written in the circulator's presence and were "correctly stated."  This satisfies the constitution's genuineness requirement.[4]  Requiring anything more than affirmation that the circulator believed that the signers were qualified electors and that they signed in his presence would frustrate rather than promote the public's right to recall.  *See Pacuilla*, 186 Ariz. at 368, 923 P.2d at 834.

---

[3]     A.R.S. § 19-205(B) provides as follows:
The person before whom the signatures were written on the signature sheet shall in an affidavit subscribed and sworn to by him before a notary public verify that each of the names on the sheet was signed in his presence on the date indicated, and that in his belief each signer was a qualified elector of the election district on the date indicated in which such recall election will be conducted.
Moreover, each signature must be made in the circulator's presence.  *Id.* § 19-205(A).

[4]     Other than checking birth certificates, social security cards, state-issued driver's licenses, and voter registration cards, it is difficult to conceive how a circulator might verify that a signature is "genuine" under Ross's definition.  The framers apparently recognized this problem.  The originally proposed language of Article 8, Part 1, Section 2, required the circulator to affirm that "*the statements therein made are true*, and that the signatures are genuine."  *Records*, *supra* ¶ 7, at 1089 (emphasis added).  The framers amended this section to remove the italicized language after Donnell Cunningham of Cochise County commented that he "cannot see how this can be an operative measure."  *Id.* at 261.

- 12 -

### 3. The circulator's oath

**¶25** Ross makes two related arguments regarding the circulator's oath. First, he contends that the oath was deficient because it was the same oath used for initiatives and referenda, whereas the constitutional drafters intended that the oath for recall be different. *See Records, supra* ¶ 7, at 269; A.R.S. § 19-205(C) (requiring additional language for recall oath). Ross may be correct that the founders initially intended different oaths,[5] but the constitution itself does not contain this requirement and the legislature has since resolved the issue by requiring additional averments for initiatives and referenda, making the oaths the same.

**¶26** The constitution mandates that circulators of initiatives and referenda swear that "each of the names on said sheet was signed in the presence of the affiant and that in the belief of the affiant each signer was a qualified elector of the State." Ariz. Const. art. 4, pt. 1, § 9. This is the "form prescribed for initiative and referendum." *See* A.R.S. § 19-205(C) (relating to recall); *see also id.* § 19-112(C) (Supp. 2011) (requiring substantially similar statements for initiatives and referenda).

---

[5] During the constitutional debates, one of the framers suggested that the oath requirement for the recall petitions "simply refer[] to the form of petition required in the initiative and referendum." *Records*, *supra* ¶ 7, at 269. The framers rejected this amendment. *Id.*

¶27    The petition at issue here contains not only the statements required by the constitution and statute for initiatives and referenda, but also an additional statement. The circulator's affidavit read as follows:

> I . . . depose and say that each individual signed this sheet of the foregoing petition in my presence on the date indicated, *and I believe that each signer's name and residence address or post office address are correctly stated* and that each signer is a qualified elector of the state of Arizona . . . .

Therefore, the circulator's oath contains language in addition to that constitutionally mandated for referenda and initiative circulators and so not only complies with the constitution, but also satisfies Ross's "additional language" test.[6]

¶28    Second, Ross argues that the oath failed to satisfy § 19-205(B) because the circulators' affidavits did not affirm that each signer was a "qualified elector *of the election district*." We disagree.

¶29    Each circulator must swear or affirm to a belief that "each signer was a qualified elector of the election district on

---

[6]    The difference between the initiative and referendum oath and the recall oath was intended to be that a recall petition circulator, in addition to the avowals set forth in the constitution and statutes, had to avow that "the circulator believes that the circulator is qualified to register to vote and all signers [of the petition] are qualified to vote in the recall election."  A.R.S. § 19-205(C).  That language has since been incorporated in the affidavit that is now statutorily required by A.R.S. § 19-112(D) for circulators of initiatives and referenda.  The legislature has the power to determine that the oath for initiatives and referenda should include more avowals than the constitutional minimum.

- 14 -

the date indicated in which such recall election will be conducted," A.R.S. § 19-205(B), and that all "signers [of the petition] are qualified to vote in the recall election," *id.* § 19-205(B).

¶30      On each signature sheet here, the circulator swore his or her belief that each signer was "qualified to vote in the recall election."  This statement follows the language in § 19-205(C) identically and is the functional equivalent of saying the signer is a qualified elector of the electoral district.[7] Moreover, the top-front of each sheet included the language, "We, the qualified electors of the electoral district from which State Senator Pearce, District 18, was elected, demand his recall."  The grounds for recall are prefaced by the statement, "We, Citizens for a Better Arizona and residents of District 18, submit this petition . . . ."  This language, combined with the language in the affidavit itself, dispels any confusion about who could sign the petition and clarifies that only qualified electors of District 18 could sign.  *See Feldmeier v. Watson*, 211 Ariz. 444, 449, 123 P.3d 180, 185 (2005) (finding

---

[7]      Not only does the oath track § 19-205(C), it is also the same language the secretary of state uses on the sample recall petition forms available to the public.  Although compliance with a government-supplied sample form does not guarantee validity, *see W. Devcor*, 168 Ariz. at 430-32, 814 P.2d at 770-72, we do find such compliance persuasive in the recall context when the language of the sample form substantially complies with constitutional and statutory requirements.

- 15 -

substantial compliance with initiative petition in Prescott that referred to "qualified electors of the state of Arizona"). The petition sheets substantially comply with § 19-205(B) and (C).

### 4. Adequacy of grounds for recall

¶31 "Every recall petition must contain a general statement, in not more than two hundred words, of the grounds of such demand." Ariz. Const. art. 8, pt. 1, § 2; *see also* A.R.S. § 19-203(A) (Supp. 2011). Each sheet of CBA's petition included the following grounds for recall:

> We, Citizens for a Better Arizona and residents of District 18, submit this petition to recall State Senator Russell Pearce for his failure to focus on issues and concerns that affect all Arizonans. Mesa and Arizona need a leader who will pass laws to create jobs, protect public education and ensure access to health care for our children and those most in need. We deserve a representative that reflects our values, beliefs and vision for Mesa and all of Arizona. By signing this petition we publicly withdraw our support for Russell Pearce and what he represents.

¶32 Ross complains that the final sentence in this paragraph violates the constitution and A.R.S. § 19-203(A) because it does not state a specific ground for recall and thus is misleading. As we stated in *Abbey*, however, the "evident purpose [of the recall is] to permit the electorate to get rid of an . . . officer with whom, for any or no reason whatever for that matter, they have become displeased." 28 Ariz. at 63, 235 P. at 154. Therefore, "[t]he grounds or reasons assigned in the

- 16 -

petition for the recall may be very general in their nature and character." *Id.*

**¶33** Voters may attempt to remove an officer for whatever reasons they choose and this "general statement," taken as a whole, clearly communicates reasons for seeking removal of Senator Pearce. Moreover, the final sentence has no potential to mislead voters, as several other portions of the petition clarify that the purpose of signing is to recall the senator. The petition's statement of grounds substantially complies with A.R.S. § 19-203(A) and Article 8, Part 1, Section 2 of the Arizona Constitution.

### 5. Striking entire petition sheets for individually deficient signatures

**¶34** Petition sheets bearing false or fraudulent circulator affidavits are void. *See Brousseau v. Fitzgerald*, 138 Ariz. 453, 456, 675 P.2d 713, 716 (1984). Ross argues that this rule requires us to strike several signature sheets from CBA's recall petition because the county recorder could not certify individual signatures on them, rendering the circulator's affidavit "false." If, he argues, the county recorder could not match a voter registration signature to a petition signature, it must mean that "the circulator did not truly witness the name of each petition being signed as stated in the circulator's affidavit." Once again, we are not convinced.

¶35     In *Brousseau*, minors and unqualified electors circulated petitions, and individuals who had not circulated any petition signed the circulator's affidavit. 138 Ariz. at 454, 675 P.2d at 714. Although the county recorder ultimately verified most of the signatures, the Court struck the petitions, finding that their fraudulent circulation tainted the entire process. *Id.* at 456, 675 P.2d at 716.

¶36     Ross misreads *Brousseau* to stand for the proposition that the Court should disqualify all petitions with affidavits based on any false information, and he finds falsity here in the fact that the secretary of state and county recorder could not verify every signature. His reading ignores the distinction between mere "omissions or irregularities" – such as the inability to read a signer's handwriting or a signer's innocent mistake about his or her voting district – on the one hand, and true fraud by petition circulators on the other. *Id.* at 455-56, 675 P.2d at 715-16 (citing *Lombardi v. State Bd. of Elections*, 386 N.Y.S.2d 718 (N.Y. App. Div. 1976) (invalidating two sheets "permeated with fraud"); *Weisberger v. Cohen*, 22 N.Y.S.2d 1011, 1012 (N.Y. Sup. Ct.), *aff'd*, 22 N.Y.S.2d 835 (N.Y. App. Div. 1940) (invalidating petition sheets rife with fraud)).

¶37     The signature sheets may contain some signatures from electors who are not qualified to vote in the recall election. But Ross presented no evidence that the circulator obtained

those signatures by fraud or that the circulator's oath was itself fraudulent. Fraud requires an element of knowledge – a guilty mental state. *See Smith v. Pinner*, 68 Ariz. 115, 122, 201 P.2d 741, 745 (1949). Ross provided no evidence that the circulators in this case knew that the signatures were invalid or that their affidavits were false. This case does not fall within the ambit of *Brousseau* and we will not strike entire petitions simply because they contain individually disqualified signatures. *See Harris v. City of Bisbee*, 219 Ariz. 36, 43 ¶ 23, 192 P.3d 162, 169 (App. 2008) (noting that "excluding all signatures on a signature sheet is appropriate only when an affidavit is defective and the presumptive validity of the affected signatures has not been restored or when . . . the affidavit is false").

### C. Transient Voters

¶38 In addition to his constitutional and statutory challenges, Ross argues that the petition improperly included 471 signatures from voters who lived in Legislative District 18 when they signed the petition, but were registered to vote in another district. He asks us to overrule *Pacuilla*, 186 Ariz. at 369, 923 P.2d at 835, and hold that these voters are not "qualified electors." Given our resolution of Ross's other challenges, the disposition of these 471 signatures is moot. The parties agree that the final certification yielded 10,296

valid signatures and that only 7,756 were required to compel an election. Thus even if Ross's challenge on this issue prevailed, the petition would still contain 9,825 signatures, 2,069 more than necessary to move forward with the recall election.

### D. Attorneys' Fees

**¶39** Ross seeks attorneys' fees pursuant to the private attorney general doctrine. *See Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989). Because Ross has not prevailed, however, he is not eligible for attorneys' fees. *Id.*

### III. DISPOSITION

**¶40** CBA's petition for the recall of Senator Pearce substantially complies with the constitutional and statutory requirements. We therefore affirm the judgment of the trial court.

_____
Rebecca White Berch, Chief Justice


CONCURRING:


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
W. Scott Bales, Justice

_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice