IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

────────────

**ROSA MARIA MORALES, AN INDIVIDUAL,**
*Plaintiff/Appellee-Cross Appellant,*


*v.*


**DENISE ARCHIBALD, IN HER CAPACITY AS THE CLERK OF THE CITY OF PHOENIX,**
*Defendant,*


**URBAN PHOENIX PROJECT PAC, A POLITICAL COMMITTEE,**
*Real Party in Interest/Appellant/Cross-Appellee,*

────────────

**RUSSELL BOWERS, IN HIS OFFICIAL CAPACITY AS THE SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES; AND KAREN FANN, IN HER OFFICIAL CAPACITY AS PRESIDENT OF THE ARIZONA SENATE,**
*Intervenors/Appellees.*

────────────

No. CV-19-0065-T/AP
Filed April 25, 2019

────────────

Appeal from the Superior Court in Maricopa County
The Honorable Rosa Mroz, Judge
No. CV2019-000793
**AFFIRMED**


Appeal to the Court of Appeals, Division One
1 CA-CV 19-0150 EL
**TRANSFERRED**

────────────

COUNSEL:

Kory Langhofer, Thomas Basile, Statecraft PLLC, Phoenix, Attorneys for Rosa Morales, House Speaker Russell Bowers and Senate President Karen Fann

Roopali H. Desai, D. Andrew Gaona, Coppersmith Brockelman PLC, Phoenix, Attorneys for Urban Phoenix Project PAC

────────────

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE BRUTINEL and JUSTICES TIMMER, BOLICK, GOULD, LOPEZ, and PELANDER (RETIRED) joined.

_____

CHIEF JUSTICE BALES, opinion of the Court:

**¶1** We here explain our March 20, 2019 order affirming the trial court's decision enjoining a recall election of Phoenix City Councilman Michael Nowakowski. Urban Phoenix Project PAC (the "Committee") failed to collect sufficient valid signatures to trigger a recall because its signature sheets were not attached to a time-and-date-marked copy of its recall application, as required by statute.

**I.**

**¶2** Nowakowski represents District 7 of the City of Phoenix. Displeased with his conduct as a councilman, some electors from District 7 sought to initiate a recall election. To that end, the Committee filed an application for a recall petition on August 29, 2018. After gathering signatures over the next several months, the Committee in December submitted a recall petition with 2,361 signatures to the Phoenix City Clerk for verification. The next month, the City Clerk certified that the petition had sufficient signatures to be on the ballot for the March 2019 city election.

**¶3** Rosa Maria Morales, an elector of District 7, then filed this action challenging the recall petition in superior court. She raised three objections: (1) the Committee failed to attach the "official text of the recall, which consists of the date-and-time stamped copy of the petition serial number application," to petition sheets in violation of A.R.S. §§ 19-202.01(D) and -203(D); (2) "a copy of the petition form" was not attached to the Committee's petition application, in violation of § 19-202.01(B)-(C); and (3) the petition sheets did not include language required by A.R.S. § 19-204(A).

**¶4** The Committee moved to dismiss, arguing that Morales lacked a statutory cause of action, as the sole statute authorizing an elector's challenge to recall petitions is A.R.S. § 19-208.04, which only allows challenges to "the number of signatures certified by the county recorder under the provisions of § 19-208.02." (Pursuant to Phoenix City Charter Chapter XVII, § 3, the Phoenix City Clerk takes the place of the county

recorder in the signature verification process.) On the merits, the Committee argued that it should be required only to substantially comply with the statutory requirements for recalls; that § 19-201.01's requirement of strict compliance with statutory requirements is unconstitutional; and that it had substantially complied.

¶5 The trial court ruled that § 19-208.04 is the only statute authorizing a private right of action in the recall context. Under that section, a private party may challenge the validity of signatures. Accordingly, the trial court concluded that Morales was statutorily authorized to raise her first objection. Because Morales's other two objections were not based on signature verification, the court held they were not cognizable and dismissed them.

¶6 On the merits of Morales's surviving objection, the trial court determined that the Committee had failed to comply with the statutory requirements. The court found that the Committee failed to attach a "time-and-date-marked copy of the [petition] application" to its petition sheets, and thus the City Clerk should not have included any of the sheets in certifying the number of signatures. § 19-203(D). Accordingly, the court ruled the recall was not eligible to be placed on the ballot.

¶7 Although ultimately unnecessary to its decision, the trial court also rejected the Committee's challenge to the constitutionality of § 19-201.01, and, in the event the court's jurisdictional rulings were not upheld on appeal, ruled alternatively for Morales on her second objection and for the Committee on the third.

¶8 Morales and the Committee appealed to the court of appeals, and we granted the Committee's unopposed motion to transfer. In this Court, Morales argues that the trial court erred by holding that no broad right of action exists to challenge recall petitions and by rejecting Morales's third objection related to the petition language. The Committee argues that the trial court erred in upholding § 19-201.01, in ruling that the petitions did not comply with §§ 19-202.01(D) and -203(D), and in its alternative ruling on Morales's second objection.

3

**II.**

**¶9**        Before reaching the merits, we consider whether Morales is statutorily authorized to raise any of her objections to the recall. Morales contends that § 19-208.04 broadly authorizes recall challenges; the Committee argues that no statute allows her claims.

**A.**

**¶10**        Section 19-208.04 allows any elector to challenge the number of signatures certified on a recall petition. Morales argues that this authorization creates a broad private right of action "irrespective of the legal theory undergirding the challenge." She states that it is "well-established in the initiative and referendum context" that petitions can be challenged for reasons beyond the certification of signatures.

**¶11**        Morales neglects two key points. First, her claim that the "plain language" of § 19-208.04 creates a broad private right of action is undermined by the statute's own terms. Section 19-208.04(B) authorizes a challenge to "the number of signatures certified by the county recorder." In this respect, recalls (title 2 of chapter 19) are like initiatives and referenda (title 1 of chapter 19), for which the same sort of challenge is authorized by A.R.S. § 19-121.03(B). But the provisions for initiatives and referenda are notably different from those for recalls because they also include A.R.S. § 19-122(C), which authorizes any person to "contest the validity of an initiative or referendum" for failure to comply with any statutory requirement. *See Kromko v. Superior Court*, 168 Ariz. 51, 55-56 (1991) (stating that § 19-122(C) "permits any citizen to explore beyond the county recorder's certification" of signatures). The cases Morales cites in support of her broad right of action, all in the initiative and referendum context, were brought under § 19-122, for which there is no counterpart in the recall context.

**¶12**        The second flaw in Morales's argument is that it conflates the process for recalls with those for initiatives and referenda. *See Ross v. Bennett*, 228 Ariz. 174, 178 ¶¶ 19-21 (2011). We have previously declined to extend the same requirements we place on referendum petitions to recall petitions. *See id.* We decline to do so here as well.

**¶13** The legislature has statutorily created a broad private right of action in the context of initiatives and referenda but has declined to do so for recalls. With that background, we will not construe § 19-208.04(B) as implicitly incorporating § 19-122. *See City of Flagstaff v. Mangum*, 164 Ariz. 395, 398 (1990) (stating "[w]here the legislature uses a term within one statute and excludes it from another, the term usually will not be read into the provision from which it was excluded").

**B.**

**¶14** By its terms, § 19-208.04 authorizes a challenge to "the number of signatures certified by the county recorder under the provisions of § 19-208.02." Section 19-208.02(A), in turn, requires "the county recorder [to] determine the number of signatures or affidavits of individuals whose names were transmitted that must be disqualified for any of the reasons set forth in § 19-121.02, subsection A." Under § 19-121.02(A), the county recorder must disqualify signatures for statutorily prescribed reasons, including "the same reasons any signatures or entire petition sheets could have been removed by the secretary of state pursuant to § 19-121.01, subsection A, paragraph 1 or 3. § 19-121.02(A)(11). As the final link in the chain, § 19-121.01(A)(1) and (3) specify requirements for petition sheets and signatures.

**¶15** Although Morales is not entitled broadly to challenge the validity of the recall, § 19-208.04 authorizes her to challenge the number of signatures certified. The grounds for such a challenge rest in the statutes, including § 19-121.01(A)(1) or (3), that specify how the number of certified signatures is determined. Thus, the trial court correctly ruled that it had jurisdiction to consider Morales's first objection, which contended that the signature sheets should not have been counted because they had not been attached to "the complete title and text of the measure." § 19-121.01(A)(1)(a).

**¶16** Morales's other objections – a failure to attach a petition sheet when initially filing the petition application and to include on petition sheets the precise language prescribed by § 19-204(A) – do not relate to the validity of signatures. Although these procedural steps should be followed by those undertaking a recall petition, § 19-208.04 does not contemplate a private right of action challenging a failure to comply with these

5

requirements. Thus, the trial court correctly ruled that it was not authorized to consider Morales's second and third objections.

### III.

**¶17**    We now consider whether the Committee complied with § 19-121.01(A)(1)(a), which requires that petition sheets be attached to the "complete title and text" of the recall in order for the signatures to be verified.

**¶18**    The "complete title and text" of a recall measure is defined in § 19-202.01(D), which states "the time-and-date-marked application . . . constitutes the official copy of the text of the recall and shall be used in all instances as the text of the recall." Similarly, § 19-203(D) states the "time-and-date-marked copy of the application . . . constitutes the full and correct copy of the recall text and is the only valid copy for circulation of signatures. Signatures that are collected with any copy of the recall text that is not a facsimile of the time-and-date-marked copy . . . are invalid."

**¶19**    The Committee argues that neither § 19-202.01(D) nor § 19-203(D) states that a time-and-date-marked copy of the application must be attached to the petition sheets. True, neither statute uses the word "attach." But § 19-203(D) expressly recognizes that signatures, to be valid, must be collected with such a copy, which § 19-202.01(D) specifies "shall be used in all instances as the text of the recall."

**¶20**    Moreover, the definition of the text of the recall does not operate in isolation. Morales's entire challenge is premised on § 19-208.04 which, at the end of a line of references, incorporates § 19-121.01(A)(1)(a). That statute requires the removal of petition sheets "not attached to a copy of the complete title and text of the measure." Thus, to the extent that § 19-203(D) only implicitly requires the attachment of the time-and-date-marked application, § 19-121.01(A)(1)(a) makes the requirement express.

**¶21**    Taken together, the statutes require that any petition signature sheet not attached to a copy of the time-and-date-marked application be removed from the verification process. It is not enough, as the Committee argues, for the petition sheets to reproduce the application's statement of why a recall is being sought. The time-and-date-marked copy of the application – unlike the petition sheets – both identifies the applicant

(including any organization, certain officers, and contact information) and reflects that the application has in fact been filed.  Requiring the attachment of a such a copy also helps ensure that signatures are not obtained before the application is filed, consistent with §§ 19-202.01(A) (requiring the submission of an application before circulating a petition) and -203(D) (providing that signatures are invalid if not collected with a copy of the time-and-date-marked copy of the application).

**¶22**        Here, none of the Committee's sheets were attached to the complete time-and-date-marked application.  Moreover, because the Committee failed to attach a copy of the application to the petition sheets, and it did not otherwise collect the signatures with a "facsimile of the time-and-date-marked copy," § 19-203(D), it completely failed to comply with the statutory requirements.  Finally, because the Committee did not substantially comply, we need not determine the constitutionality of § 19-201.01.  *See Stanwitz v. Reagan*, 245 Ariz. 344, 348 ¶ 12 (2018).  Nor do we address any of the other issues raised by the parties.

## IV.

**¶23**        Our state constitution guarantees voters the right to recall elected officers for whatever reasons they choose.  *Ross*, 228 Ariz. at 176 ¶ 7, 180 ¶ 33.  That right, however, must be exercised pursuant to constitutional and statutory provisions.  While we recognize that the Committee and its volunteers undertook substantial efforts to gather signatures, those signatures could not be certified because the petition sheets were not attached to a time-and-date-marked copy of the recall application.  We therefore affirm the trial court's decision enjoining the recall election.