NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of the Conservatorship for:

DAVID WAYNE REDKEY, *An Adult.*,

DAVID WAYNE REDKEY, *Petitioner/Appellant,*

*v.*

STEPHANIE MCCOLLUM; MARK J. THEUT; DANIEL J. MAZZA,
*Respondents/Appellees.*

No. 1 CA-CV 25-0236 PB

FILED 03-30-2026

Appeal from the Superior Court in Maricopa County
No. PB2009-002224
The Honorable Lisa Ann VandenBerg, Judge, *Retired*

**AFFIRMED**

COUNSEL

David Wayne Redkey, M.Ed., Phoenix
*Petitioner/Appellant*

Mark J. Theut, Phoenix
*Respondent/Appellee*

Daniel J. Mazza, Scottsdale
*Respondent/Appellee*

Lawrence F. Scaringelli, Esq., Scottsdale
*Counsel for Respondent/Appellee Stephanie McCollum*

---

**MEMORANDUM DECISION**

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**B E C K E**, Judge:

**¶1**        David Wayne Redkey appeals the superior court's denial of his petition to terminate conservatorship and the granting of his petition to substitute Agatha Redkey ("Agatha") as conservator. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2**        In 2007, Redkey suffered a traumatic brain injury ("TBI") in a car accident. He later received financial compensation when he settled a personal injury suit arising from the accident. Because of his TBI, Redkey suffered from short term memory loss, lacked judgment, and became impulsive. Consequently, Redkey, through his attorney William A. Clarke, filed a petition for appointment of J.P. Morgan Chase Bank ("Chase Bank") as his conservator. In support of his petition, Redkey filed three medical reports discussing his injuries and their impact on his functioning. In December 2009, the superior court found by clear and convincing evidence that Redkey was an incapacitated person and appointed Chase Bank as his conservator.

**¶3**        In 2016, when Chase Bank resigned as conservator, the superior court appointed MB Financial Bank ("MB Financial") as successor conservator. Around that time, the court appointed Rick Kilfoy as Redkey's attorney. Three years later, when MB Financial resigned, First Western Trust was appointed as successor conservator. In 2022, First Western Trust sought to resign and petitioned to have Next Steps for Families, LLC appointed as successor conservator. Because Redkey opposed appointing Next Steps For Families, First Western Trust asked the court to appoint a guardian ad litem ("GAL") to protect Redkey's best interests and to

2

nominate an "appropriate [s]uccessor [c]onservator." The court appointed Mark J. Theut as Redkey's GAL. The court later discharged First Western and appointed Stephanie McCollum as successor conservator.

**¶4** In April 2023, Theut successfully moved to expand his authority to include investigating the need for a guardian for Redkey. The court's order authorized Theut to "schedule[] and obtain[] the necessary evaluations by the appropriate medical professionals." The court ordered Redkey to work with Kilfoy to schedule and complete a medical evaluation. In July 2023, at Theut's request, the court appointed Dr. Jack Potts to evaluate Redkey.

**¶5** Meanwhile, the court discharged Kilfoy after Redkey filed a self-represented motion to terminate legal representation in which he alleged that Kilfoy failed to act in Redkey's best interests. The court then appointed Alexia J. Semlek, who moved to withdraw a month later, claiming the relationship had "broken down beyond repair." Redkey requested the appointment of new counsel, and the court appointed Daniel J. Mazza, who has remained Redkey's counsel since.

**¶6** In November 2023, Theut asked the court to compel Redkey to complete a medical evaluation with Dr. Potts. The court directed Redkey to comply and scheduled a December 2023 medical evaluation. In January 2024, Theut filed a notice informing the court that Redkey had not complied with the court's order. The court issued another order directing Redkey to comply and set dates again for the medical evaluation. However, it does not appear that Redkey ever completed the evaluation.

**¶7** In April 2024, Redkey, through his attorney Mazza, petitioned to terminate the conservatorship, arguing his cognition had improved since his accident in 2007 and he could now handle his own affairs. Redkey also argued the Arizona Constitution and statutes required the superior court to grant his request for a jury trial on his petition to terminate, which the superior court denied. Redkey filed a separate petition asking the court to appoint his wife, Agatha Redkey, as successor conservator. A two-day bench trial was scheduled for January 2025 to consider both petitions.

**¶8** The court also ordered Dr. Potts to file a medical evaluation report by June 2024, but Dr. Potts did not do so because Redkey had not cooperated. In October 2024, the superior court scheduled a "final interview" of Redkey by Dr. Potts, but Redkey again refused to meet with him. To reduce costs to the estate, the court ordered that a medical evaluation report would only be considered if Mazza requested it. Mazza

filed a notice explaining Redkey did not want Dr. Potts to complete the evaluation or testify at the upcoming bench trial, and the court released Dr. Potts from his appointment.

**¶9**        After a two-day bench trial, the court denied Redkey's petition to terminate the conservatorship but granted his petition to appoint Agatha as the successor conservator. Redkey, proceeding as a self-represented party, timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(2).

## DISCUSSION

I.     **We Lack Jurisdiction to Consider Redkey's Arguments Regarding the Initial Conservatorship Appointment.**

**¶10**        Redkey argues the three 2009 medical evaluations were "unlawfully introduced" in the initial conservatorship proceedings and later improperly relied upon to maintain the conservatorship. Redkey also argues Clarke's characterization of the conservatorship as a "light conservatorship" in a fee statement filed with the superior court in 2010 and the "dual representation" of both Redkey and Redkey's first conservator Chase Bank "rendered the [initial] proceeding jurisdictionally defective and constitutionally infirm from the outset."

**¶11**        Redkey's appeal, however, is from the superior court's January 2025 order dismissing his petition to terminate conservatorship and granting his petition to substitute conservator. His notice of appeal does not include the 2009 initial order appointing a conservator or any filings from the first conservator. Nor could it. The deadline to appeal those matters passed long ago. *See* ARCAP 9(a). Because those matters are not before us in this appeal, we do not consider them. *See Lee v. Lee*, 133 Ariz. 118, 124 (App. 1982) ("The court of appeals acquires no jurisdiction to review matters not contained in the notice of appeal.").

II.     **The Superior Court Did Not Require Redkey to Undergo New Evaluations to Remedy Evidentiary Issues.**

**¶12**        Redkey next argues the superior court "improperly required [him] to submit to new evaluations . . . placing the burden on [him] to justify his capacity rather than placing the burden on the movants to establish incapacity." He claims that, because the initial conservatorship orders from 2009 were based on improperly obtained medical evaluations, the superior court should have vacated the conservatorship instead of ordering Redkey

to undergo new evaluations to "remedy" the violation after "suppression of foundational evidence."

**¶13**          Redkey misapprehends the purpose of the new evaluations. As discussed above, the 2009 medical evaluations submitted by Redkey were considered by the court in initially granting the petition for conservatorship. Redkey fails to identify where in the record the superior court ordered Redkey to submit to new medical evaluations to sustain the conservatorship. Rather Mark J. Theut, Redkey's GAL, asked the court to expand his authority to investigate Redkey's need for a guardian, which included obtaining a medical evaluation. Redkey did not object and the court granted the motion, ordering Dr. Potts to conduct the evaluation. The superior court has "wide latitude to perform its statutory duty to safeguard the well-being of the ward." *In re Guardianship of Kelly*, 184 Ariz. 514, 518 (App. 1996).

**¶14**          Because Redkey refused to comply with multiple court orders compelling his participation in the evaluation, the court declined to enforce its order compelling Redkey to complete the evaluation. The court ordered Dr. Potts to finish his evaluation, draft a medical report, and testify at the bench trial *only if* Redkey requested those services.

**¶15**          Redkey then asked the court to release Dr. Potts from his appointment without completing a report. Dr. Potts never completed his medical evaluation of Redkey, and he did not submit a report or testify at the January 2025 hearing. Redkey fails to show error.

## III.     The Superior Court Did Not Abuse Its Discretion by Denying Redkey's Motion to Remove the GAL.

**¶16**          Redkey next argues the superior court erred when it refused to remove Mark J. Theut as his GAL despite "multiple documented conflicts of interest." Specifically, Redkey alleges a "structural conflict" was created when Lawrence F. Scaringelli represented McCollum, Redkey's former conservator. Redkey alleges this created an appearance of impropriety because Paul J. Theut, Mark J. Theut's brother, is a law partner at Scaringelli's firm.

**¶17**          The superior court is given discretion in the matter of removing a guardian, and Redkey has shown no abuse of discretion here. *See In re Cosden's Est.*, 12 Ariz. App. 88, 89 (1970). Under Arizona Rule of the Professional Conduct ("ER") 1.7(a)(2), a conflict of interest exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a third person

5

or by a personal interest of the lawyer." Redkey does not articulate how Scaringelli's representation of McCollum materially limited Theut from serving as GAL. He argues, without legal authority, that his GAL having a familial connection to one of the partners at Scaringelli's firm automatically creates a conflict of interest that cannot be remedied. But Redkey fails to articulate how this is a conflict of interest as defined in ER 1.7. Redkey has shown no error.

## IV. The Superior Court Did Not Show Preferential Treatment to McCollum or Subject Agatha Redkey to Unfair Restrictions.

¶18 Redkey next alleges that the superior court gave preferential treatment to former conservator McCollum while subjecting successor conservator Agatha to "heightened restrictions and adverse presumptions." Redkey alleges the court engaged in favoritism and "shielded" itself from allegations of judicial misconduct by failing to rule on or even acknowledge his amended emergency petition to substitute conservator, his motion to exceed page limits, and his motion to supplement the record. Redkey filed a petition and two motions alleging "systemic conflicts of interest" surrounding McCollum and the court, arguing McCollum's disciplinary history disqualified her from serving as his conservator, and accusing McCollum of taking excessive compensation from the estate.

¶19 Redkey must overcome the presumption that judges are free of bias and prejudice by a preponderance of the evidence. *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 63, ¶ 29 (App. 2010). He has not done so. Adverse rulings alone do not constitute judicial bias. *Id.* Furthermore, the court dismissed Redkey's filings because he was specifically ordered not to file self-represented filings while he had court-appointed counsel. And the court explicitly stated, in multiple orders, it would not consider any more filings by Redkey that were not filed through his court-appointed counsel.

¶20 As for the restrictions surrounding Agatha's appointment, the superior court required her to: (1) hire an attorney to advise her on her duties as Redkey's conservator; (2) submit a 6-month plan describing how she would account for marital expenditures and the use of Redkey's unrestricted money; (3) file a credit report for herself and Redkey every month for the first year; and (4) file a plan on how she would manage the investment account including hiring a financial expert to manage the funds. Redkey fails to show that the court abused its broad discretion by imposing these conditions. *See* A.R.S. § 14-5426(A).

¶21 Redkey argues that because Agatha does not have any professional fiduciary complaints against her and is his spouse, any limitations placed on her denied her "basic financial rights" and subjected her to "hostile scrutiny." But Agatha is not a licensed fiduciary, making it irrelevant that she has no professional fiduciary complaints filed against her. Furthermore, Redkey fails to cite any legal authority showing Agatha's "basic financial rights" have been denied or the existence of such rights in this context. Given that Agatha was not a licensed fiduciary and her testimony at the January 2025 hearing indicated she had some confusion about the role of a conservator and the details of Redkey's conservatorship, the court did not abuse its discretion by setting reasonable restrictions on her appointment for Redkey's protection.

## V. Redkey Does Not Have a Right to a Jury Trial for His Petition to Terminate the Conservatorship.

¶22 Finally, Redkey argues A.R.S. § 14-1306(A) and Article 2, Section 23 of the Arizona Constitution give him the right to a jury trial on his petition to terminate the conservatorship. And because the superior court held a bench trial on his petition, Redkey asserts that he was denied that right and his right to due process. We review the interpretation of constitutional provisions and statutes *de novo. Ross v. Bennett*, 228 Ariz. 174, 176, ¶ 6 (2011).

¶23 By statute, "[A] party is entitled to trial by jury in any proceeding in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury." A.R.S. § 14-1306(A). This statute does not create a right to a jury trial in probate proceedings but rather mandates a jury trial *if one is constitutionally required. In re Est. of Newman*, 219 Ariz. 260, 272, ¶ 44 (App. 2008).

¶24 The Arizona Constitution preserves the right to a jury trial in cases where it would have existed under the common law before statehood. *Id.* at ¶ 45. And no constitutional right to a jury trial exists for actions that would have been considered equitable at the time the Arizona Constitution was adopted. *Id.* at 273–74, ¶ 55; *see also Davis v. First Nat. Bank*, 26 Ariz. 621, 626 (1924) (holding the Arizona Constitution does not create a right to a jury trial for equitable actions).

¶25 Probate matters have historically been resolved in equity and were not a part of the common law. *In re Roarke's Est.*, 8 Ariz. 16, 21 (1902) ("Probate matters belong to ecclesiastical jurisdiction, where a jury was not a right."). And before statehood, the appointment of guardians for

incapacitated persons was a matter decided by the court, not a jury. *See* Revised Statutes of the Territory of Arizona Title XVII, ch. 14, § 1985 (1901) (If "it appears to ***the probate judge*** that the person in question is incapable of taking care of himself and managing his property, he must appoint a guardian . . . ." (emphasis added)); Revised Statutes of Arizona, Title VI, ch. 15, § 1133 (1913) (If "it appears ***to the court*** that the person in question is incapable of taking care of himself and managing his property, the court must appoint a guardian . . . ." (emphasis added)).

¶26        Because neither Article 2, Section 23 nor A.R.S. § 14-1306(A) establish a right to jury trial in this type of proceeding, Redkey's due process rights were not violated.

## CONCLUSION

¶27        We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR